GANNETT PACIFIC CORPORATION, a Delaware corporation, dba Honolulu Star Bulletin; LEE ENTERPRISES, INCORPORATED, DBA KGMB-TV, and HONOLULU ADVERTISER, INC., dba Honolulu Advertiser, Petitioners, *v.* THE HONORABLE ROBERT RICHARDSON, STATE OF HAWAII, through the Department of Prosecuting Attorney, IUPELI T. PUSI, aka Iupeli Tuua, and SOLOMU'U TUUA, aka Solonu'u Pusi, Respondents

NO. 6946

MAY 25, 1978

OGATA, ACTING C.J., MENOR, J., CIRCUIT JUDGE LUM IN PLACE OF CHIEF JUSTICE RICHARDSON, RECUSED; CIRCUIT JUDGE HAYASHI IN PLACE OF JUSTICE KOBAYASHI, DISQUALIFIED; AND CIRCUIT JUDGE BURNS IN PLACE OF JUSTICE KIDWELL, RECUSED

OPINION OF THE COURT BY MENOR, J.

A petition for a writ of prohibition has been addressed to this court by representatives of the news media requesting the issuance of an order prohibiting the respondent district judge from closing to the public the preliminary hearing in the case of *State v. Pusi and Tuua,* Case Nos. 2P through 8P and 9P through 15P, District Court of the First Circuit, Honolulu Division. The hearing had been open to the public without restriction when it first commenced, and the respondent had twice denied the defendants' motion for closure. At a later point in the proceedings, however, the respondent made the determination that the remainder of the hearing should be closed. Representatives of the news media, who were present when the announcement was made, objected to the closure. On March 1, 1978, the respondent nonetheless ordered the proceeding closed for essentially the following reason:

"[The court] is deeply concerned that these defendants in the present status of notoriety concerning their cases and indirectly due to the aura of criticism surrounding this court itself, may now find it very difficult or impossible to get a fair and speedy trial. I remind the media that due process of law requires a fair trial by jury, not a trial by media, and because of this court's deepseated concern not only for the rights of the defendants but also for the

rights of witnesses and victims and also for its concern for the whole body of our system of justice, this court has decided to take this precipitous action and will now close this hearing.''

The petitioners then petitioned the circuit court of the first circuit for a writ of prohibition, and the circuit judge to whom the application was made ordered a stay of the district court proceedings pending the determination of the petition. On March 13, 1978, the circuit court denied the petition. That same day the petitioners filed a similar petition with this court, and we ordered a further stay until their petition was heard and determined. On March 22, 1978, this court heard the petition and on March 23, 1978, issued its "Interim Order'' prohibiting the respondent from closing the proceedings, except under certain specified circumstances. We reaffirm the basic thrust of the interim order.

I

In opposing the petition the respondents have raised two important procedural points. They argue first, that this court ought to be bound by the decision of the circuit court under the doctrine of res judicata. This argument is premised upon the earlier denial by the circuit court of the petition for a similar writ. Both this court and the circuit court have concurrent original jurisdiction over the same subject matter. *See* HRS §§ 602-5(4) and 603-21.7(b). Secondly, they argue that there is no justifiable basis for the issuance of this court's writ of prohibition.

The doctrine of res judicata is applicable to judgments in prohibition. And the fact that the judgment was rendered by a lower court has been held to be immaterial. *See Chesapeake & O. R. Co. v. McDonald,* 65 W. Va. 201, 63 S.E. 968 (1909); *Dawson v. Superior Ct.,* 158 Cal. 73, 110 P. 479 (1910); *Cohn v. Isensee,* 45 Cal. App. 509, 188 P. 278 (1920). We agree that this doctrine ought to apply procedurally to this court in prohibition proceedings. Only where there is urgent reason, therefore, for the invocation of this court's supervisory jurisdiction over the lower courts, under both HRS §§ 602-4 and

602-5, will this court consider departing from this rule.

Then, too, the writ of prohibition is an extraordinary remedy, and we have repeatedly said that prohibition will not be utilized as a substitute for appeal. *Chung v. Ogata,* 54 Haw. 146, 504 P.2d 868 (1972); *State ex rel McClung v. Fukushima,* 53 Haw. 295, 492 P.2d 128 (1972). We have deviated from this rule only in rare and exigent circumstances. *See, e.g., Sapienza v. Hayashi,* 57 Haw. 289, 554 P.2d 1131 (1976). In that case we found the trial court's order to be impermissibly overbroad, and further concluded that to allow the matter to wend its way through the appellate process would not be in the public interest and would work upon the public irreparable harm. We think that the facts and circumstances of this case warrant the exercise of this court's supervisory jurisdiction over the lower courts, as well as the exercise of its discretionary power to issue its writ of prohibition.

Under the Hawaii Rules of Penal Procedure, the district courts have the responsibility of conducting preliminary hearings, and we have been advised that district judges at various times and in varying degrees have closed portions of their preliminary hearings to the public. Apparently pursuant to this practice, the respondent district judge in this case decided that he could and would close the remainder of the preliminary hearing then being conducted by him. He further announced that he was seriously considering closure of future preliminary hearings assigned to him for disposition.

Whether and to what extent preliminary hearings may be closed to the public is a question of grave import, for it involves not only the right of the accused to be tried by an impartial jury, but it also has a vital relevancy to the right of the public to attend and to be present at judicial proceedings. And because of the relative frequency with which preliminary hearings are being conducted in the district courts, thus enhancing the probability of collisions between established and fundamental rights, and because it appears to us only too clear that the district courts are in immediate need of direction from this court on a procedural and substantive matter of public importance, we deem it necessary to entertain the petition for writ of prohibition.

II

This case has brought into focus the problems inherent in the constitutionally based concept of a public trial. The Sixth Amendment provides that in all criminal prosecutions, the defendant shall have the right to a speedy and public trial. Article I, Section 11, of the Hawaii Constitution, which was modeled after the Sixth Amendment to the United States Constitution, *State v. Wong*, 47 Haw. 361, 389 P.2d 439 (1964), contains a similar mandate. "The purpose of the requirement of a public trial was to guarantee that the accused would be fairly dealt with and not unjustly condemned." *Estes v. Texas*, 381 U. S. 532, 538-539 (1965). But so deeply ingrained has been our traditional mistrust for secret trials, *see In re Oliver*, 333 U.S. 257 (1948), that the general policy of open trials has become firmly embedded in our system of jurisprudence. Thus, while the defendant is entitled as of right to a public trial, he is not entitled as of right to a private trial. *See Singer v. United States*, 380 U.S. 24, 35 (1965); *State v. Hashimoto*, 47 Haw. 185, 389 P.2d 146 (1963). In denying the defendant's request to have certain spectators excluded from the courtroom, this court in *Hashimoto* observed:

> "Courts are established for the judicial administration of justice. They are open to the public, subject only to the control and supervision of the court proceedings by the presiding judge in whom is vested the authority to clear the courtroom of persons customarily excluded or of persons whose conduct or presence in the courtrooms is such that the orderly, fair and impartial functioning of the courts is affected. The fact that they are open serves as a safeguard of the integrity of our courts."[1] 47 Haw. at 200, 389 P.2d at 155.

---

[1] In Territory v. Scharsch, 25 Haw. 429, 430 (1920), this court more specifically said that the trial judge "may exclude from the courtroom . . . persons who become hysterical or those who may be inclined to disturb the orderly progress of the trial or minors during a class of trials the evidence of which would tend to degrade public morals or to shock public decency." Other exceptional circumstances, such as clear and present danger to the physical safety of certain witnesses, may supply the justification for the temporary exclusion of the public from the proceedings.

The role played by the news media in this area is unique and highly significant — for so long as it acts responsibly, the media is definitely a positive force in the fair and impartial administration of justice.[2]

"[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations. Without the information provided by the press most of us and many of our representatives would be unable to vote intelligently or to register opinions on the administration of government generally. With respect to judicial proceedings in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491-492 (1975).

But contrary to petitioners' contention that the conduct of the respondent district judge in closing the proceedings abridged their First Amendment right to freedom of the press, we find no such denial. The closure order was directed at the public at large and was not limited to representatives of the news media. The question of freedom of the press was therefore only collaterally and indirectly involved. The news media in these situations does not occupy a special status distinct from that of the general public. *Estes v. Texas, supra; Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976); *Nixon v. Warner Communications, Inc.*, 98 S. Ct. 1306 (1978). The right of media representatives to be present is derived from

---

[2] The record in this case does not disclose news media reporting geared towards sensationalism or editorializing calculated to create public bias and prejudice against the defendants. On the contrary, the district judge expressly found that the news media had accurately reported the events as they occurred and had acted very responsibly in this matter.

their status as members of the general public. As such, they have a right to be present and may freely report whatever occurs in open court, but they occupy no privileged position vis-a-vis the general public. *Estes v. Texas, supra; cf. Nixon v. Warner Communications, Inc., supra.*

> "Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public." *Estes v. Texas, supra* at 589 (Harlan, J., concurring).

The reasons underlying the policy of open and public administration of justice are clear and compelling. Because of our natural suspicion and traditional aversion as a people to secret proceedings, suggestions of unfairness, discrimination, undue leniency, favoritism, and incompetence are more easily entertained when access by the public to judicial proceedings are unduly restricted. "Secrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges. . . ." *Nebraska Press Assn. v. Stuart, supra,* at 587 (Brennan, J., concurring). Thus, the openness which serves as a safeguard against attempts to employ our courts as instruments of persecution also serves to enhance public trust and confidence in the integrity of the judicial process. Such trust and confidence is a vital ingredient in the administration of justice under our system of jurisprudence. The efficiency, competence, and fairness of our judicial system are matters of legitimate interest and concern to our citizenry, and free access to our courtrooms is essential to their proper understanding of the nature and quality of the judicial process.

There will be situations, however, where this right of the public to know must yield to the overriding requirements of due process. In *Bates v. Hawkins,* 52 Haw. 463, 478 P.2d 840 (1970), for example, this court approved in camera bail hearings in order "to safeguard [the accused] against possible prejudice at his later plenary trial through public revelation or

reporting in the press or other media of the obviously incomplete but necessarily incriminating evidence.'' (this court quoting from *State v. Obstein,* 52 N.J. 516, 247 A.2d 5 (1968)).

Preliminary hearings may present another such situation. But on the question of whether or to what extent this open-door policy should apply to preliminary hearings, there appears to be a divergence of opinion. The United States Supreme Court has not yet specifically addressed itself to this issue, *see Nebraska Press Association v. Stuart, supra.* Neither has this court until now had the occasion to express itself on the question. Because of the nature and purpose of preliminary hearings, certain jurisdictions by rule or by statute require that such hearings, upon request of the defendant, be closed. Partly on the theory that the preliminary hearing is a creature of statute and is governed by statutory provisions, such a statute has been held to be constitutionally sound. *Azbill v. Fisher,* 84 Nev. 414, 442 P.2d 916 (1968). Other courts have held that even in the absence of rule or statute, closure is discretionary with the hearings judge. *See generally,* Annotations, 31 A.L.R.3d 819, 49 A.L.R.3d 1019. Still others hold that only in the most exceptional circumstances may preliminary hearings be closed to the public. *See Keene Publishing v. Keene District Court,* 3 Med.L. Rptr. 1595 (N.H., Nov. 3, 1977). *Cf. United States v. Cianfrani,* 46 L.W. 2521 (3rd Cir., Mar. 16, 1978); *compare, Gannett Co. v. DePasquale,* 43 N.Y.2d 370, 372 N.E.2d 544 (1977); *Philadelphia Newspapers, Inc. v. Jerome,* 98 S. Ct. 546 (1978).

A preliminary hearing is not strictly a trial, for the guilt or innocence of the accused is not at issue. The only question before the district judge at a preliminary hearing is whether there is probable cause to believe, from the evidence presented, that the accused committed the felony offense with which he is charged. The sole purpose of the hearing is to determine whether there is sufficient evidence against the defendant to warrant his detention for action by the grand jury. *State v. Tominaga,* 45 Haw. 604, 372 P.2d 356 (1962). It is designed to prevent an accused from being held in custody without a prompt determination of probable cause. What may

be sufficient to justify continued detention under the probable cause standard may not suffice to warrant a verdict of guilty under the trial standard of proof beyond a reasonable doubt. And while the rules permit the accused to offer evidence in his own behalf, *see* H.R.P.P. Rule 5(c)(3), in actual practice the defendant very seldom, if ever, will take the witness stand or offer witness testimony in his own behalf. In the usual case, therefore, only the prosecution's side is presented.

But the real concern for the accused's right to a fair and impartial trial stems from the nature and character of the evidence that may be received on the issue of probable cause at a preliminary hearing. Certain evidence inadmissible at trial is nonetheless admissible at a preliminary hearing. A finding of probable cause may be based in whole or in part upon hearsay evidence, and Rule 5(c)(3) of the Hawaii Rules of Penal Procedure expressly provides that "[o]bjections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary hearing." Thus, a damaging confession, which may later be suppressed at the trial level on the ground that it was involuntary and illegally obtained by the police, may be admitted at a preliminary hearing. Physical evidence unlawfully seized may likewise be admitted at a preliminary hearing.

The threat to the defendant's rights inherent in these situations is obvious and is actually two-fold. The right to a preliminary hearing is that of the accused alone. It is an important right. But the accused's awareness that such evidence could be publicly aired and publicized, thus exposing him to community hatred, passion, scorn or ridicule, even if later found to have been illegally obtained, could have a chilling effect upon his exercise of his right to a preliminary hearing. Even more basic, however, is the threat to his right to be tried by a fair and impartial jury. This right is guaranteed to him not only by the Sixth and Fourteenth Amendments to the Federal Constitution, but also by Article I, Sections 4 and 11, of the Hawaii Constitution. The right to a trial by an impartial jury is fundamental, *In re Oliver, supra,* and prejudicial pretrial publicity could have the effect of

denying him that right, *see Sheppard v. Maxwell,* 384 U. S. 333 (1966); *Rideau v. Louisiana,* 373 U. S. 723 (1963); *Irvin v. Dowd,* 366 U. S. 717 (1961); *Groppi v. Wisconsin,* 400 U. S. 505 (1971). And while "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in.every kind of criminal case to an unfair trial," *Nebraska Press Assn. v. Stuart, supra,* at 565, such publicity may nevertheless render it very difficult for the accused to assure himself of a fair and impartial jury. Further, while publicity in legal proceedings is favored by the law, it has always been with the qualification that no injustice to the persons immediately concerned would be occasioned thereby. *See* 2 Cooley, Constitutional Limitations 931-32, quoted in *Estes v. Texas, supra,* at 542.

We think, therefore, while reaffirming this jurisdiction's policy of openness in judicial proceedings, that traditional notions of fair play and impartial justice require that where the presiding judge, upon motion of the defendant for closure, determines that certain evidence sought to be introduced may be inadmissible at trial on the issue of guilt or innocence, but is admissible at a preliminary hearing on the question of probable cause, and further finds that there is a substantial likelihood that an open hearing as to that part of the proceedings would interfere with the defendant's right to a fair trial by an impartial jury, a departure from this policy will be justified. *Cf. Bates v. Hawkins, supra. Compare,* American Bar Association Standards of Fair Trial and Free Press § 3.1 (Approved draft, 1968).[3] The fundamentals of a fair trial ought to require no less than that highly prejudicial information, which would not be admissible at trial, should be kept, if possible, from the eyes and ears of prospective jurors. *See Bates v. Hawkins, supra; Craemer v. Superior Court,* 265 C.A.2d 216, 71 Cal.Rptr. 193 (1968).

In determining whether there is such a likelihood, the district judge shall consider the nature of the evidence sought

---

[3] We understand that these ABA standards are presently undergoing some basic modifications.

to be presented;[4] the probability of such information reaching potential jurors; the likely prejudicial impact of this information upon prospective veniremen;[5] and the availability and efficacy of alternative means to neutralize the effect of such disclosures. These would include the voir dire at trial and the exercise of peremptory and challenges for cause,[6] as well as clear and express admonitions to the jury once selected. The district court judge may also consider the possibility of trial continuances until community passions subside, but always bearing in mind the constitutional right of the defendant to a speedy trial and the mandate of H.R.P.P. Rule 48 that except under certain circumstances, an accused shall be brought to trial within six months from the date of arrest or of the filing of the charge, whichever occurs sooner. He may also consider such other alternative means as may be available to the defendant and to the court at trial.

Those portions of the preliminary hearing necessarily involved in the determination of probable inadmissibility at trial and of the likelihood of prejudice,[7] as well as the presentation

---

[4] Certain hearsay evidence, for example, may not be of such a nature and effect as to imperil the accused's right to a fair and impartial jury.

[5] Marshall v. United States, 360 U.S. 310 (1959), is illustrative of judicial concern over the difficulty of effacing highly prejudicial information from the minds of jurors. In that case the conviction of the defendant was reversed by the United States Supreme Court and a new trial ordered when it was shown that seven jurors had seen newspaper accounts concerning matters prejudicial to the defendant which would not have been admissible at trial. This result was reached by the Court despite the further showing that each of the affected jurors under questioning by the trial judge averred that he could decide the case only on the evidence of record, and that he harbored no prejudice against the defendant as a result of the newspaper articles.

[6] Peremptory challenges, however, are not unlimited, see H.R.P.P. Rule 24, and depending on the circumstances the peremptory and challenge for cause procedure may not be adequate to effectuate the constitutional guarantee of a fair trial by an impartial jury, see Groppi v. United States, supra, at 510.

[7] Of course, where either or both determinations are adverse to the movant, the transcript of these aspects of the preliminary hearing shall be made available to the public for a legitimate and proper purpose in the normal course of the court reporter's duties.

of the evidence thus found to be inadmissible and prejudicial, shall be closed to the public at the request of the defendant.[8] However, a complete record of those parts of the proceedings closed to the public shall be kept and made available to the public for a legitimate and proper purpose following the completion of trial or disposition of the case without trial,[9] and the factual basis for the court's determinations upon which the closure is predicated shall be made apparent on the record.

On the question of whether and to what extent an interested member of the public may participate in these determinations, there is no rule, statute, or precedent that allows such participation. The Hawaii Rules of Penal Procedure make no provision for nonparty intervention in criminal proceedings, and the adjudicated cases hold that a third party is not entitled to intervene in a criminal prosecution, on the ground that he has no direct interest in the determination of the guilt or innocence of the accused to justify his intervention. *Cent. S. Car. Ch. Soc. of Prof. Journ. v. U.S.D.C.*, 551 F.2d 559 (4th Cir. 1977); *State v. Simants*, 194 Neb. 783, 236 N.W.2d 794 (1975), reversed on other grounds in *Nebraska Press Assn. v. Stuart, supra.* To permit a third party to intervene would "unnecessarily encumber pending litigation and invite the entry of 'nonparty-parties' when the right or interest sought to be enforced is not directly involved in the subject matter of the pending proceeding." *State ex rel. Gore Newspaper Co. v. Tyson*, 313 So.2d 777, 781 (Fla.App. 1975). His remedy must ordinarily lie in an original action in prohibition, *Cent. S. Car. Ch. Soc. of Prof. Journ. v. U.S.D.C., supra; State v. Simants, supra; State ex rel. Gore Newspaper Co. v.*

---

[8] It has been called to our attention that the district judge in this case, over the objection of representatives of the news media, excluded them and the public from the closing arguments. We think a direction from the court to counsel for the State and for the defendants to refrain from discussing the inadmissible matter in their closing arguments ought to have sufficed. That part of the proceedings should then have been open to the public.

[9] We think that this requirement will in some measure satisfy the salutary objective of subjecting law enforcement policies to public scrutiny.

*Tyson, supra,* or in mandamus,[10] *see Fong v. Sapienza,* 39 Haw. 79 (1951); *McClung v. Fukushima, supra; Brown v. Hawkins,* 50 Haw. 232, 437 P.2d 97 (1968). *See also* HRS § 602.5(4); HRS § 603-21.7(b).

The respondent district judge in this case was concerned, and properly so, with the effect pretrial publicity might have on the right of the defendants to a trial by an impartial jury. Judged by the standards we have established, however, there was an insufficient basis for his closure order. Accordingly, the Interim Order heretofore issued by this court, at least insofar as it does not conflict with this opinion, is made permanent.

So ordered.

*David J. Dezzani* for Gannett Pacific Corp., petitioner.

*Jeffrey N. Watanabe* for Lee Enterprises, Inc., petitioner.

*Jeffrey Portnoy* for Honolulu Advertiser, Inc., petitioner.

*Walter Chuck,* Special Attorney General for *Judge Robert Richardson,* respondent.

*Donald Tsukiyama,* Public Defender for *Iupeli T. Pusi and Solonu'u Tuua,* respondents.

*Randolph Slaton,* Deputy Corporation Counsel for Dept. of Prosecuting Attorney, respondent.

---

[10] In the present case there was also the additional avenue of appeal from the circuit court's denial of the petition. But whether the petitioners could have appealed directly from the respondent district judge's order we need not now decide. In Cent. S. Car. Ch. Soc. of Prof. Journ. v. U.S.D.C., supra, standing to appeal directly from the trial court's pretrial order regulating the conduct of the participants in the trial and the conduct and seating of the press in the courtroom was denied. See also State ex rel. Gore Newspaper Co. v. Tyson, supra. However, in United States v. Schiavo, 504 F.2d 1 (3rd Cir. 1974), cert. denied 419 U.S. 1096, standing to appeal from the district court's order denying the petitioners' motion to vacate an earlier order enjoining news media representatives from publishing any information concerning criminal indictments against the accused was recognized. See also United States v. Gurney, 558 F.2d 1202 (5th Cir. 1977), where standing to appeal from the trial court's denial of the petitioners' request to examine trial documents was also recognized.