STATE OF HAWAII, Plaintiff-Appellee, *v.* SHIRLEY LYNN FIELDS, Defendant-Appellant

NO. 9252

(CRIMINAL NO. 54655)

AUGUST 14, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

A condition of probation imposed upon Shirley Lynn Fields makes her "subject at all times during the period of her probation to a warrantless search of her person, property and place of residence for illicit drugs and substances by any law enforcement officer including her probation officer." She contends this portion of the sentence handed down by the Circuit Court of the First Circuit contravenes her constitutionally protected right to be free of unreasonable searches and seizures. The State of Hawaii maintains a "probationer cannot expect to have the same rights and privileges as an ordinary citizen" and the condition is reasonable in light of the circumstances surrounding its imposition. But we think it is not

entirely consonant with the objects of probation and constitutional demands. Thus, we set aside the offending condition and remand the case for the exercise of discretion consistent with the statute covering the grant of probation and constitutional provisions governing searches and seizures.

I.

The pertinent facts are simple and uncontested. The defendant was indicted on five counts of Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712-1242(1)(c).[1] Following plea bargaining between the prosecuting attorney and defense counsel, the defendant pleaded guilty to Counts I, II, and V of the indictment.[2] The circuit court adjudged her guilty of the offenses described in those counts and placed her on probation for a period of five years on condition that she comply with the terms of probation outlined by the court. The Terms and Conditions of Probation encompassed the usual commands delivered to probationers. But they also included several "special conditions of probation,"[3] including one, Condition 6(f), that ap-

---

[1] HRS § 712-1242(1)(c) reads:
*Promoting a dangerous drug in the second degree.* (1) A person commits the offense of promoting a dangerous drug in the second degree if he knowingly:

. . . .

(c) Distributes any dangerous drug in any amount.

[2] Subsequently, an order of nolle prosequi was entered to dispose of Counts III and IV of the indictment.

[3] Condition 6 read as follows:
6. Your further special conditions of probation are as follows:
a) That she be committed to the custody of the Director of the Department of Social Services and Housing for a period of five months imprisonment; mittimus to issue forthwith;
b) Upon her completion of imprisonment, she shall perform 200 hours of community service, to commence June 1, 1983 and to be completed by June 1, 1984;
c) That she obtain drug rehabilitation services or mental health services as directed by the probation officer at her own expense, and remain in such treatment until clinically discharged;
d) That she refrain from the possession of any illicit drugs or substances;
e) That as directed by the probation officer and at her own expense she submit to drug testing to detect the use of illicit drugs — the result of any

pears to strip the probationer of the guarantee against unreasonable searches and seizures afforded under the federal and state constitutions.

Although she has not been subjected to a warrantless search pursuant to Condition 6(f), the defendant appeals from the sentence of the circuit court. Her right to seek appellate review, however, is challenged by the prosecuting attorney.

## II.

The defendant seeks a declaration from this court that Condition 6(f) represents an undue infringement of her constitutional right to be free of unreasonable searches and seizures. But her request for review comes before any effort by the government to exploit the particular condition of probation. We are, of course, reminded by the prosecuting attorney that the self-imposed rules governing the exercise of our statutory jurisdiction militate against a present review of the circuit court's order. The contention is not without merit; yet, we think there is reason for us to act here.

## A.

Article III, Section 2 of the Constitution of the United States confines the federal judiciary's authority to "cases" and "contro-

---

positive findings to be considered prima facie evidence of probation violation;

f) That she be subject at all times during the period of her probation to a warrantless search of her person, property and place of residence for illicit drugs and substances by any law enforcement officer including her probation officer;

g) That upon her release from incarceration she be enrolled in a vocational or educational training program and/or be gainfully employed throughout the period of her probation.

The defendant later moved for reconsideration of condition 6(f) and 6(c), which required her to undergo drug rehabilitation therapy at her own expense. Though the circuit court did not modify condition 6(f), condition 6(c) was amended by the circuit court in its "Order Granting in part and Denying in part Defendant's Motion for Reconsideration of Sentence" to provide:

6. c) That she obtain drug rehabilitation services or mental health services as directed by the probation officer at State expense in the event Defendant is unable to afford such treatment, and remain in such treatment until clinically discharged.

versies." *See* L. Tribe, *American Constitutional Law* 52 (1978). "[T]hose words limit the business of the federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* at 53. Thus, "courts created pursuant to Article III are barred . . . from deciding 'abstract, hypothetical or contingent questions.' " *Id.* at 56. This restriction of power stems "directly from the 'case or controversy' requirement." *Id.* at 60. "A further but closely related limitation . . . , that of *ripeness,* is a product both of the prudential considerations that influence federal courts and of the constitutional restrictions expressed in the advisory opinion ban." *Id.* (Emphasis in original).

While the courts of the State of Hawaii are not bound by a "case or controversy" requirement,[4] we nonetheless recognize that the " 'prudential rules' of judicial self-governance 'founded in concern about the proper — and properly limited — role of courts in a democratic society' are always of relevant concern." *Life of the Land v. Land Use Commission,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citations omitted). For "even in the absence of constitutional restrictions, courts [must] still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting." *Id.*

"[R]ipeness is peculiarly a question of timing," *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140 (1974), and the relevant prudential rule deals with " '[p]roblems of prematurity and abstractness' that may prevent adjudication in all but the exceptional case. *Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588 (1972)." *Buckley v. Valeo,* 424 U.S. 1, 114 (1976). A ruling that an

---

[4] "The case or controversy requirement . . . has no bearing on the jurisdiction of [state] courts. Nothing in Article III of the Federal Constitution prevents [a state appellate court] from rendering an advisory opinion concerning the constitutionality of [state] legislation if it considers it appropriate to do so." *Secretary of State of Maryland v. Joseph H. Munson Co.,* 52 U.S.L.W. 4875, 4882 (U.S. June 26, 1984) (Stevens, J., concurring). And Article VI, Section 1 of the Hawaii Constitution, which vests the State judiciary with authority, contains no "case or controversy" requirement; it reads:

The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

issue is not ripe ordinarily indicates the court has concluded "a later decision [may be] more apt or . . . that the matter is not yet appropriate for adjudication." L. Tribe, *supra,* at 61; *see also State v. Maxwell,* 62 Haw. 556, 562, 617 P.2d 816, 820 (1980); *cf. State ex rel. McClung v. Fukushima,* 53 Haw. 295, 298, 492 P.2d 128, 130 (1972) ("[m]andamus may not be resorted to in anticipation of an omission to perform a duty."); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346 (1936) (Brandeis, J., concurring) (the Supreme Court "will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.' ").

## B.

### 1.

If the foregoing precepts were strictly applied to the situation at hand, we could only conclude that problems of prematurity preclude an adjudication of the issue raised on appeal; for at the moment, Condition 6(f) merely poses a nascent threat to Shirley Lynn Fields. And until a police or probation officer conducts a warrantless search of her person, property, or place of residence, we would be hard put to say the dispute between the State and the defendant has ripened into a justiciable controversy. Other important considerations nevertheless lead us to believe we are confronted with the exceptional case demanding attention in advance of an actual attempt by the government to enforce the condition.

Condition 6(f), we said, gives an appearance of stripping the defendant of protection against invasions of privacy by the government. To be sure, "there is considerable authority supporting the proposition that probationers may lawfully be subjected to searches which, absent their probation status, would be deemed unlawful because of the absence of probable cause or a search warrant or both." 3 W. LaFave, *Search and Seizure* § 10.10, at 422 (1978) (citations omitted). Still, we were recently instructed by the Supreme Court that the deprivation of a fundamental right may not be lightly regarded, even when exacted as part of the price of conditional release. *See Minnesota v. Murphy,* ____ U.S. ____, ____, 104 S. Ct. 1136, 1142 (1984) ("[a] defendant does not lose [his Fifth Amendment] protection by reason of his conviction of a crime" and placement on probation).

## 2.

The condition in question is neither mandated nor expressly sanctioned by the statutory provisions governing the suspension of sentence and the grant of probation. *See* HRS §§ 706-620 to 706-624. It is a creature of judicial ingenuity presumably founded on the discretion vested in the sentencing court to saddle a probationer with any condition "reasonably related to [his] rehabilitation . . . and not unduly restrictive of his liberty or incompatible with his freedom or conscience." HRS § 706-624(2)(1). Should we choose to subject it to present scrutiny, our inquiry would focus on the propriety of judicial action; we would not be venturing "into areas committed to other branches of government." *Life of the Land v. Land Use Commission*, 63 Haw. at 172, 623 P.2d at 438. We think these circumstances give us reason to act before there is an attempt to enforce the sentencing court's order, since our bounden duty includes the prevention of serious judicial mistakes in situations where resort to appeal may be otherwise foreclosed.

We have been charged with "the general superintendence of all courts of inferior jurisdiction" of the State of Hawaii. HRS § 602-4.[5] Concomitantly, we have been endowed with authority "to *prevent* and correct errors and abuses therein where no other remedy is expressly provided by law." *Id.* (Emphasis added). However, a strong commitment to the prudential rules shaping the exercise of our jurisdiction has resulted in a sparing use of this extraordinary power. *See Gannett Pacific Corp. v. Richardson*, 59 Haw. 224, 226-27, 580 P.2d 49, 53 (1978).

Yet in our view the situation at hand represents the rare case where it "would not be in the public interest" to compel the issue "to wend its way through the appellate process" after the sentencing court's order has been enforced, *id.* at 227, 580 P.2d at 53; for we have cause to believe the particular order has been adopted as a "standard condition of probation" affecting a sizeable group of

---

[5] HRS § 602-4 provides:

*Superintendence of inferior courts.* The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law.

offenders.[6] And if more than a few probationers are in constant jeopardy of being divested by judicial fiat of statutory and constitutional protection that should rightfully be theirs, our supervisory duty would render the prevention of such error obligatory, though the prudential rules may counsel against the consideration of this appeal. Thus, we turn to the question of whether the deprivation can be justified as a condition of probation.

### III.

### A.

"Probation is a judicial act whereby a convicted criminal offender is released into the community under the supervision of a probation officer, in lieu of incarceration." Note, *Fourth Amendment Limitations on Probation and Parole Supervision*, 1976 Duke L.J. 71, 71 n.1. "The essence of probation is the *condition* — a judicially imposed restriction upon the convict's actions after release." Note, *Judicial Review of Probation Conditions*, 67 Colum. L. Rev. 181, 181 (1967) (footnote omitted) (emphasis in original). And "probationers, like parolees and prisoners, properly are subject to limitations from which ordinary persons are free." *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975).

While several conditions to which an offender may be subjected have been prescribed by statute, the legislature has acknowledged that judicial discretion in fashioning others may contribute to the effectiveness of probation. *See* HRS § 706-624.[7] But any other condition imposed in the exercise of this discretion is only valid to

---

[6] In the course of the defendant's Motion for Reconsideration of Sentence, the circuit court intimated that Condition 6(f) was one of a number of standard conditions it could invoke in placing an offender on probation.

[7] HRS § 706-624 in relevant part reads:
  *Conditions of suspension of sentence or probation.* (1) When the court suspends the imposition of sentence on a person who has been convicted of a crime or sentences him to be placed on probation, it shall attach such reasonable conditions, authorized by this section, as it deems necessary to insure that he will lead a law-abiding life or likely to assist him to do so.
  (2) The court, as a condition of its order, may require the defendant:
    (a) To meet his family responsibilities;
    (b) To devote himself to an employment or occupation;
    (c) To undergo available medical or psychiatric treatment and to enter

the extent that it may serve the ends of rehabilitation and is "not unduly restrictive of [the probationer's] liberty or incompatible with his freedom or conscience." HRS § 706-624(2)(1).

Here, the release of Shirley Lynn Fields has been conditioned upon her submission at all times to warrantless searches for illicit drugs by any law enforcement officer. This may well serve one of the twin goals of probation, the protection of the public. Still, the pertinent legislative command is that the condition further the other objective, the rehabilitation of the offender, and that it be neither too restrictive of the offender's liberty nor incompatible with his freedom or conscience. We doubt that a near-total surrender of privacy could be reasonably related to rehabilitation, and we think the deprivation would be inconsistent with even the limited freedom afforded someone who but for the grace of the sentencing court would be in prison.

There unquestionably is a difference "between correctional supervision which seeks to restore a released offender to society through rehabilitation, and supervision which seeks . . . to investigate and prosecute criminal activity." 1976 Duke L.J. *supra,* at 94. The police officer's principal role in our criminal justice scheme is related to the investigation and prosecution of criminal activity, and any search he may conduct of Shirley Lynn Fields would probably be "totally unrelated to either her prior conviction or her

---

and remain in a specified institution, when required for that purpose;

(d) To pursue a prescribed secular course of study or vocational training;

(e) To attend or reside in a facility established for the instruction, recreation or residence of persons on probation;

(f) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons;

(g) To have in his possession no firearms or other dangerous instruments unless granted written permission by the court;

(h) To make restitution of the fruits of his crimes or to make reparation, in an amount he can afford to pay, for the loss or damage caused thereby;

(i) To remain within the jurisdiction of the court and to notify the court or the probation officer of any change in his address or his employment;

(j) To report as directed to the court or the probation officer and to permit the officer to visit his home;

(k) To post a bond, with or without surety, conditioned on the performance of any of the foregoing obligations;

(l) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom or conscience.

rehabilitation." *United States v. Consuelo-Gonzalez,* 521 F.2d at 265.

Under the circumstances the relationship between warrantless searches at the whim of police officers and the rehabilitation of the probationer is tenuous at best. Indiscriminate invasions of privacy, in our opinion, would be unlikely to foster respect for the law; they could well be "destructive of the rehabilitative process." W. LaFave, *supra,* at 446. At any rate, they would be "unduly restrictive of [her] liberty or incompatible with [her] freedom or conscience." HRS § 706-624(2)(1). For "[a] probationer, like a parolee, has the right to enjoy a significant degree of privacy" and liberty. *United States v. Consuelo-Gonzalez,* 521 F.2d at 265 (citation omitted); *cf. Morrisey v. Brewer,* 408 U.S. 471, 482 (1972) ("[t]hough the State properly subjects [the parolee] to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison.") (footnote omitted). But we do not mean to suggest that warrantless searches to which Shirley Lynn Fields may be subjected by her probation officer should be viewed in the same light.

### B.

After convicting Shirley Lynn Fields of three counts of Promoting a Dangerous Drug and finding she was "in need of the supervision, guidance, assistance, or direction that the probation service can provide," HRS § 706-622, the circuit court released her into the community under the supervision of a probation officer in lieu of imprisonment. It thus became incumbent upon the probation officer to "keep [himself] informed [about] the conduct and condition of the defendant [, to] report thereon to the court [, to] use all suitable methods to aid the defendant and to bring about improvement in [her] conduct and condition." HRS § 806-73.[8] In

---

[8] HRS § 806-73, in its entirety, reads as follows:

*Duties and powers of probation officers.* A probation officer shall investigate any case referred to him for investigation by the court in which he is serving and report thereon to the court. The probation officer shall instruct each defendant placed on probation under his supervision regarding the terms and conditions of his probation. He shall keep informed concerning the conduct and condition of the defendant and shall report thereon to the court and shall use all suitable methods to aid the defendant and to bring about improvement in his conduct and condition. The probation officer shall keep such records and perform such other duties as the court may direct. Every probation officer shall, within the scope of his duties, have the powers of a police officer.

short, he assumed "correctional supervision [over a released offender] which seeks to restore [her] to society through rehabilitation." 1976 Duke L.J. *supra*, at 94. The question now is whether the vesting of power in the correctional supervisor to conduct warrantless searches of the person, property, and place of residence of the probationer serves a legitimate correctional purpose. We believe this may contribute to her rehabilitation.

The probation officer has been described as "a social therapist in an authoritative setting." Newman, *Concepts of Treatment in Probation and Parole Supervision,* 25 Fed. Prob. 11, 16 (Mar. 1961). The system he serves demands that he be a helper, a monitor, and an enforcer; it instructs him to aid and guide an individual who has displayed antisocial and criminal behavior, to evaluate and report on his progress toward integration into the community, and to curb his criminal tendencies.[9] The desired rehabilitation of the subject of therapy is largely dependent upon the therapist's ability to gain "a thorough understanding of the [probationer] and his environment, including his personal habits, his relationships with other persons, and what he is doing, both at home and outside it." *Latta v. Fitzharris,* 521 F.2d 246, 249 (9th Cir. 1975). In sum, the system gives the probation officer "a special and unique interest in invading the [probationer's] privacy." *Id.*

His reason for intruding into the private world of the probationer, unlike that of the police officer, is her demonstrated need for correctional supervision, which she presumably accepted as the preferred alternative to imprisonment. Moreover, what has been expressly authorized as a correctional tool at the disposal of the correctional supervisor are quests for dangerous drugs and substances. Given her known proclivity for involvement in the trafficking of illicit drugs, we encounter no difficulty in finding the necessary connection between such searches and the rehabilitation of Shirley Lynn Fields.

Our inquiry, however, does not end here, for the relevant statu-

---

[9] HRS § 806-73, as we observed earlier, requires a probation officer, to keep informed of the conduct and condition of the defendant, to report thereon, and to aid the defendant in bringing about an improvement in his conduct and condition. It also provides that "[e]very probation officer shall, within the scope of his duties, have the powers of a police officer."

tory provision further commands that the condition be neither too restrictive of the probationer's liberty nor incompatible with her freedom or conscience. And searches and seizures are, of course, subject to constitutional regulation as well. The statutory and the constitutional issues nevertheless boil down to a single issue.

## IV.

The question remaining is whether warrantless searches of the person, property, and place of residence of Shirley Lynn Fields for dangerous drugs and substances would be unreasonable even when conducted by the correctional supervisor responsible for her guidance during the probationary term. We believe they would be, unless he is able to point to specific and articulable facts giving rise to a reasonable suspicion that illicit drugs are concealed on the person, in the property, or at the place of residence of the probationer.

## A.

If anything is settled in the law of search and seizure, it is that a search without a warrant issued upon probable cause is unreasonable per se, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Jenkins*, 62 Haw. 660, 662, 619 P.2d 108, 110 (1980). Yet as we noted, "there is considerable authority supporting the proposition that probationers may lawfully be subjected to searches which, absent their probation status, would be deemed unlawful because of the absence of probable cause or a search warrant or both." W. LaFave, *supra*, at 422.

In approving the searches, "[s]ome courts ... stress that ... probation is an 'act of grace,' from which it is concluded that such beneficence may be attended by whatever restrictions upon privacy the government may deem appropriate." W. LaFave, *supra*, at 423. "Or ... it is frequently concluded that searches of [probationers] are proper because consented to as a part of the 'contract' of release." *Id.* Granted that Shirley Lynn Fields may have been released rather than incarcerated as "an act of grace" and she may have "consented" to being searched at all times, searches limited only by

their purpose of seeking illicit drugs, in our view, cannot withstand constitutional scrutiny.

"[T]he liberty of a parolee [or a probationer], although indeterminate, includes many of the core values of unqualified liberty," *Morrissey v. Brewer,* 408 U.S. at 482, and "[a] probationer, like the parolee, has the right to enjoy a significant degree of privacy." *United States v. Consuelo-Gonzalez,* 521 F.2d at 265. Assuming the circuit court deemed the probationer's release "an act of grace" and her freedom a privilege, "[b]y whatever name, the liberty is valuable" and entitled to constitutional protection. *Morrissey v. Brewer,* 408 U.S. at 482. If the court proceeded on consent, it obviously was secured in a "situation . . . instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper v. North Carolina,* 391 U.S. 543, 550 (1968). Consequently, a warrantless search must meet a test of reasonableness even when carried out in fulfillment of a condition of probation.

## B.

"[T]he right to privacy embodied in the Fourth Amendment is enforceable against the States," *Mapp v. Ohio,* 367 U.S. 643, 660 (1961), and we would ordinarily be guided by the pronouncements of the Supreme Court in deciding what may be reasonable in the circumstances. If the Court has spoken on the particular question before us, it has not done so in clear and commanding tones. But the Constitution of the State of Hawaii explicitly protects "the people . . . against unreasonable searches, seizures and invasions of privacy."[10] And "as the ultimate judicial tribunal in this state, this court has final, unreviewable authority to interpret and enforce the Hawaii Constitution." *State v. Kaluna,* 55 Haw. 361, 369, 520 P.2d 51, 58 (1974).

We said in *Kaluna* that "each case of search and seizure without a warrant must turn on its own facts, and that each proffered

---

[10] Article I, section 7 of the Hawaii Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

justification for a warrantless search must meet the test of necessity inherent in the concept of reasonableness." 55 Haw. at 371-72, 520 P.2d at 60. The rationale offered here for warrantless intrusions is the recognized need to redirect an offender and to curb further criminal conduct on her part. Our task, then, is to weigh this societal interest against the individual's interest in maintaining her privacy.

In addition to the general governmental interest above, the means selected to promote rehabilitation gives the probation officer "a special and unique interest in invading the [probationer's] privacy," *Latta v. Fitzharris,* 521 F.2d at 249. In contrast, the grant of probationary status presupposes at least a partial surrender of privacy; since close supervision by a correctional supervisor, as we have seen, is the mainspring of probation. When the substantial governmental interest in the success of a program designed to rehabilitate a convicted criminal is weighed against her diminished expectation of privacy, we would have to agree there is reason here for permitting searches for illicit drugs without a warrant issued upon probable cause. This is not to say the offender's interest in privacy is insignificant and that she may be subjected to searches at the supervisor's caprice or fancy. The particular intrusion must still be justified by a reasonable suspicion supportable by specific and articulable facts that dangerous drugs and substances are being secreted by the probationer.[11]

The sentence is vacated and the case is remanded for the imposition of a sentence not inconsistent with this opinion.[12]

*Anson O. Rego (Joanne M. Lanham* with him on reply brief; *Anson O. Rego,* A Law Corporation, of counsel) for appellant.

*Shirley Smith (Arthur E. Ross* on the brief), Deputy Prosecuting Attorneys, for appellee.

---

[11] The foregoing test of reasonableness would allow a probation officer to intrude into the privacy of an offender under his supervision where the probable cause standard might not.

[12] The privilege against self-incrimination appears to be implicated in Condition 6(e), but the appellant does not urge that the circuit court erred in imposing the condition.

## CONCURRING OPINION OF PADGETT, J.

I concur in the result and in parts I through III of the opinion. I cannot agree with part IV for the reason that in my view it is pure *obiter dictum*.

No probation condition limited to searches by appellant's correctional supervisor has been laid down, and, ergo, no search pursuant to such a condition has yet occurred. Yet, in the absence of any factual situation whatever, the opinion, in part IV, formulates a constitutional test for such searches. That test, the opinion says, is whether the correctional supervisor is able to point to "specific and articulable facts giving rise to a reasonable suspicion" that illicit drugs are concealed on the person, in the property or at the residence of the probationer, as distinguished from the test of "probable cause" necessary to support a warrant. Constitutional issues should not be decided in a vacuum. Much less should new constitutional tests be adopted in a vacuum. Yet that is what the opinion does.

Absent a specific factual situation to test that new constitutional standard against, I do not know what the standard means, and, I submit, neither will anyone else. A myriad of different factual situations involving searches by a correctional supervisor may arise. For example, I harbor grave doubts as to whether it is constitutionally impermissible to require a probationer, convicted of a drug offense, to submit to a warrantless search of his or her person by a correctional supervisor, as a matter of routine, at any scheduled meeting with such a supervisor, but the opinion would forbid this. I believe we should have a concrete factual situation before us before we undertake to lay down a constitutional standard with respect to searches of a probationer by a correctional supervisor pursuant to a probation condition. I therefore cannot agree with part IV, not because I necessarily view the legal pronouncements therein as wrong, but because, without objective facts to test them against, I cannot say that they are either right or wrong.