900 P.2d 157

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Kelly A. STANFORD, Defendant–Appellant.**

**No. 18306.**

Supreme Court of Hawai'i.

July 20, 1995.

---

Christopher R. Evans, on the briefs, Honolulu, for defendant-appellant.

Paul B.K. Wong, Deputy Pros. Atty., City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant Kelly A. Stanford appeals: (1) her conviction of prostitution, in violation of Hawai'i Revised Statutes (HRS) § 712–1200 (Supp.1992)[1]; and (2) the bail condition requiring her to stay out of the Waikīkī area between the hours of six o'clock in the evening and six o'clock in the morning. On appeal, Stanford contends that there was insufficient evidence to support her conviction and that the court's geographically restrictive bail order is unconstitutional because it is overbroad, vague, and ambiguous. We affirm.

## I. BACKGROUND

In the early morning hours of March 23, 1994, undercover Honolulu Police Officer Richard Jang was patrolling the streets of Waikīkī, when he made "eye contact" with Stanford. Stanford began speaking Japanese to him. Jang indicated to Stanford that he was of Korean ancestry and did not understand Japanese. Stanford then stated, "All I know in Korean is 'hapshida',", which Jang testified he knew was a slang term for sexual intercourse. After a brief exchange, Stanford led Jang to her room at the Island Colony Hotel. Once in the room, Jang confirmed that "the price" was $100.00. Stan-

ford instructed Jang to remove his clothes and, when she attempted to place a condom on him, Jang arrested Stanford for prostitution.

Stanford was tried in district court on June 22, 1994, and was found guilty of prostitution. Immediately thereafter, the court sentenced Stanford to a $500.00 fine and thirty days in jail. Pending appeal, the court required bail of $500.00 and placed a geographic restriction on Stanford prohibiting her from entering the Waikīkī area, as defined by the street boundaries of Kalākaua Avenue, Kapahulu Avenue, Kūhiō Avenue and McCully Street, between the hours of 6 p.m. and 6 a.m..

## II. DISCUSSION

### A. Sufficiency of the Evidence

As previously stated, Stanford contends that there was insufficient evidence to support her conviction. In reviewing the sufficiency of evidence to support a conviction, this court has repeatedly stated that

> evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992)). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *Batson*, 73 Haw. at 248–49, 831 P.2d at 931 (citation omitted).

1. HRS § 712–1200 provides in pertinent part that: "(1) A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee.

(2) As used in subsection (1), 'sexual conduct' means ... 'sexual contact,' as ... defined in section 707–700."

As we have noted, HRS § 712–1200(1) provides in pertinent part that "[a] person commits the offense of prostitution if the person ... offers to engage in sexual conduct with another person for a fee." At the trial in this case, the prosecution presented evidence showing, *inter alia,* that: (1) although unbeknownst to Stanford, Jang was an undercover police officer; (2) upon discovering that Jang was Korean, Stanford used the Korean word "hapshida," a street term for sexual intercourse; (3) Stanford led Jang to a hotel room in Waikīkī; (4) while in the hotel room, Stanford confirmed to Jang that "the price" was $100.00; and (5) after confirming the $100.00 figure, Stanford told Jang to remove his clothes and attempted to place a condom on him.

Based on the entire record and considering the evidence in the light most favorable to the prosecution, we hold that there was sufficient evidence for a reasonable trier of fact to have found Stanford guilty of prostitution.

### B. *The Geographic Restriction*

Stanford also seeks to have her "sentence" reversed and remanded with instructions to remove the geographic restriction, contending that the court's order is unconstitutional because it is overbroad, vague, and ambiguous. The prosecution concedes that, if the geographic restriction were a condition of Stanford's sentence, it would be improper. However, the prosecution asserts that, as the prohibition is a condition of Stanford's bail, it is proper under HRS § 804–7.1 (Supp.1992).[2] Furthermore, the prosecution contends that the restrictions in this case are specific and clear. Based on our review of the record, we hold that the restrictions imposed by the trial court in this case were clearly a condition of Stanford's bail and not her sentence.

When setting conditions for bail, HRS § 804–7.1(2) provides that the court may prohibit the defendant "from going to certain described geographical areas[.]" We note that many jurisdictions have found that conditions placed on bail are generally allowable. *See Ex Parte Sotelo,* 878 S.W.2d 179, 180 (Tex.Ct.App.1993) ("[T]he Texas Code of Criminal Procedure provides that the court may impose reasonable conditions on bail pending the finality of the conviction."); *State v. Mahoney,* 36 Wash.App. 499, 502, 675 P.2d 628, 630 (1984) ("In releasing a convicted defendant upon appeal, the court may impose such conditions of release as it sees fit[.]"); *Mello v. Superior Court,* 117 R.I. 578, 370 A.2d 1262 (1977) (bail may be conditional); *see generally* 8 C.J.S.Bail § 36 ("In admitting accused to bail pending appeal of his [or her] conviction, the trial court may impose such conditions as it deems reasonable under the facts...."). Furthermore, courts may impose stricter conditions on post-trial release, as opposed to pretrial release. *See Banks v. United States,* 414 F.2d 1150, 1152 (D.C.Cir.1969).

While bail restrictions are not problematic *per se,* constitutional concerns may arise in particular cases. For example, in *U.S. ex rel. Means v. Solem,* 440 F.Supp. 544 (D.S.D. 1977), Means was convicted of "rioting to obstruct" and appealed his conviction. Pending appeal, the trial court granted bail, subject to several conditions, one of which was that Means refrain "from participating in [most] American Indian Movement activities." Means nevertheless took part in a meeting between Indian leaders and law enforcement officials, and it was eventually found that this was a violation supporting a revocation of bail. In agreeing with Means' contention that the condition imposed was unconstitutional because it infringed upon his first amendment freedoms of speech and association, the court nonetheless noted that

> Means was granted bail upon certain conditions set by the trial court. In that regard, it is beyond question that the trial judge is vested with such power. As the Eighth Circuit Court of Appeals noted in *United States v. Smith,* 444 F.2d 61, 62 (8th Cir.1971), "... courts have the inher-

---

**2.** HRS § 804–7.1 provides in pertinent part: "**Conditions of release on bail, recognizance, or supervised release**.... Upon the defendant's release on bail, recognizance, or supervised release, ... the court may enter an order: ... (2)

Prohibiting the defendant from going to certain described geographical areas or premises[.]" (Bold in original.) We note that Stanford does not challenge the constitutionality of this statute.

ent power to place restrictive conditions upon the granting of bail." *Means,* 440 F.Supp. at 549. The *Means* court went on to note that, although the court had the authority to place restrictive conditions on bail, constitutional infirmities could arise when such conditions infringe on a constitutionally protected area.

In the present case, Stanford asserts only that the geographic restriction imposed on her does not pass constitutional muster because it is overbroad, vague, and ambiguous. In support of her contention, Stanford relies on *State v. Fields,* 67 Haw. 268, 686 P.2d 1379 (1984). In *Fields,* the condition of probation imposed on Fields made her subject, at all times during the period of her probation, to warrantless searches of her person, property, and residence. Examining the probation restriction, this court held that

> we would have to agree there is reason here for permitting searches for illegal drugs without a warrant issued upon probable cause. This is not to say ... that she may be subjected to searches at the supervisor's caprice[.] The particular intrusion must still be justified by a reasonable suspicion supported by specific and articulable facts[.]

*Id.* at 283, 686 P.2d at 1390.[3]

■ In this case, the prosecution requested that Stanford be ordered to "stay away from Waikīkī." Stanford protested the proposed restriction as being too broad, suggesting "[p]erhaps we can work on something to narrow it down;" Stanford specifically suggested that the court "specify certain streets within Waikīkī and times[.]" In response, the court specified the geographic and time restriction at issue; Stanford made no further objections. We now examine whether the restriction imposed is so overbroad, vague, and ambiguous that it impinges on Stanford's constitutional rights.

Other cases examining analogous prohibitions have concluded that the restrictions should be narrowly tailored in order to pass constitutional muster. In *In re White,* 97 Cal.App.3d 141, 158 Cal.Rptr. 562 (1979), Barbara White was convicted of soliciting, an act of prostitution. The court sentenced White to two years of probation, subject to the condition that White was not permitted to enter three designated "map areas" of Fresno. White challenged the restriction, and the court concluded that the restriction was unreasonable, stating that:

> The map condition may have some relationship to the crime of soliciting. However, a blanket prohibition against being in a designated area of Fresno "anytime, day or night", appears to be unduly harsh and oppressive.... There are simply innumerable situations in which a probationer could be in the map area which are unrelated to prostitution.... [T]he condition is too broad in proscribing every type of activity.... There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances and on its total atmosphere.

*White,* 97 Cal.App.3d at 147–48, 158 Cal. Rptr. at 566.

In *Oyoghok v. Anchorage,* 641 P.2d 1267 (Alaska App.1982), Diane Oyoghok pled *nolo contendere* to two counts of soliciting for prostitution. She was sentenced to two sixty-day concurrent suspended sentences and placed on probation for one year. As a special condition of probation, Oyoghok was restricted from going within a two-block radius of a particular intersection in downtown Anchorage. Oyoghok argued, *inter alia,* that the restriction was unconstitutionally vague and overbroad. In holding that the restriction was not error, the court stated, *inter alia,* that there was no indication that the restriction had any significant impact on Oyoghok herself, a factor that distinguished it from *White.* Although the court agreed that the restriction could have been more narrowly tailored, the court held that the restriction was reasonably related to rehabili-

---

**3.** In making her argument, Stanford relies on cases involving analogous conditions imposed in probation settings. Because Stanford has not challenged her restriction on any grounds other than time, place, and manner (e.g., freedom of association) and has not argued that bail and probation differ for purposes of this restriction, there is no need for us to examine whether any bail/probation distinction is material.

tation, was not too vague to be understood, and had not invited arbitrary enforcement. *See also Jones v. State,* 727 P.2d 6, 9 (Alaska App.1986) ("If the court wishes to impose probation conditions involving area restrictions, it may do so only upon evidence of a relationship between [the] offenses and the prohibited activity or area. They also cannot be so broadly drawn as to deny the defendant access to his residence and occupation.").

In this case, the court imposed a geographic restriction on Stanford less onerous than those imposed in *White* or *Oyoghok.* Stanford has presented no evidence in her one-paragraph argument on appeal that the restriction has actually caused her any harm. And, although the restriction covers a large physical space (the "Waikīkī area"), Stanford is only forbidden to enter this area during the hours most closely associated with the crime for which she was found guilty. Additionally, the restriction is sufficiently definite such that the average person is provided adequate notice of what behavior is prohibited. *See Commonwealth v. Power,* 420 Mass. 410, 650 N.E.2d 87 (1995) (A probation condition is not unconstitutionally vague if it is adequately clear so as to inform the defendant of what conduct is prohibited.); *see also State v. Gaylord,* 78 Hawai'i 127, 890 P.2d 1167 (1995), *State v. Lee,* 75 Haw. 80, 856 P.2d 1246 (1993). Thus, Stanford's argument that the prohibition is overbroad, vague, ambiguous and therefore unconstitutional, is unpersuasive and the restrictions imposed are well within the discretion of the trial court. *See Mahoney* and *Mello, supra.*

### III. *CONCLUSION*

Based on the foregoing, we affirm the conviction and bail condition of the district court.