SHANDA L. McCLOSKEY, Plaintiff–Appellant, v.
**HONOLULU POLICE DEPARTMENT; DOUGLAS G.
GIBB**, individually and in his capacity as Chief of Police of
the Honolulu Police Department; **FRANK SUA**, individually
and in his capacity as Major of Internal Affairs of the Honolulu
Police Department; **ROBERT HARPER**, individually and
in his capacity as Major of Personnel of the Honolulu Police
Department; **FRANK F. FASI**, Mayor of the City and County
of Honolulu; **CITY AND COUNTY OF HONOLULU**,
Defendants–Appellees, and **JOHN DOES 1–10, JANE
DOES 1–10; DOE BUSINESS ENTITIES PARTNER-
SHIPS 1–10; DOE UNINCORPORATED ORGANIZA-
TIONS 1–10**; and **DOE GOVERNMENTAL AGENCIES
1–10**, Defendants

NO. 14221

(CIV. NO. 89–2181–07)

OCTOBER 25, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND INTERMEDIATE
COURT OF APPEALS ASSOCIATE JUDGE
TANAKA, IN PLACE OF MOON, J.,
DISQUALIFIED

OPINION OF THE COURT BY LUM, C.J.

This court is called upon to decide whether the drug testing program of the Honolulu Police Department (HPD) violates the Hawaii Constitution. We conclude that neither the right to privacy of article I, section 6 nor the right to be free of unreasonable

searches of article I, section 7 is infringed upon by the HPD's program of urine testing.

## I.

Plaintiff–Appellant Shanda McCloskey (Appellant) has been a police officer since October 1984, assigned to the patrol division. Before being hired, she submitted to an extensive investigation of her personal background and qualifications, including criminal and traffic history, prior employment, psychological profile, and neighborhood and personal references. She also submitted to a pre–employment physical for which she produced a urine sample for testing.

Police officers are required to follow prescribed rules and regulations, and a code of ethics regarding their public and private life. They are required to conduct themselves so as not to bring disrepute upon HPD, to maintain themselves mentally and physically, and to avoid the use of drugs and narcotics. Furthermore, as police officers, they must always be mentally and physically alert while driving motor vehicles, and must exercise good judgment in the use of guns.

## II.

In response to concerns of illegal drug use within the police department, HPD implemented, in October 1986, a drug testing program. It required police officers to submit to drug tests on either a random, frequent, or regular basis, depending on the officer's duties.

An officer being tested must produce a urine specimen, in the privacy of a bathroom stall. No observation by a monitor is needed or used. Potential problems of adulteration or switching of urine

samples are dealt with both by testing the temperature and specific gravity of the sample, and by dyeing the water in the toilet blue to prevent use of that water.

The samples are identified only by a control number, and a strict chain of custody procedure is utilized whenever the samples are transported. Half of each sample is forwarded for testing to an independent laboratory and half retained at HPD. Upon receiving the urine sample, the laboratory tests it only for indications of marijuana and cocaine use. Although urine tests can reveal any number of things about a person such as pregnancy, the samples taken by HPD are tested only for evidence of illegal drug use.

To prevent false reports of the presence of drugs, the laboratory performs confirmatory tests on any specimen testing positive. On receiving a positive test report, HPD sends the retained sample to a different independent laboratory for a confirmatory test. Only if the sample again tests positive, is it considered to be positive for drug use by HPD.

After a sample tests positive, the Internal Affairs Division of HPD administratively investigates whether there is a legitimate reason why the officer's urine tested positive for drugs. The investigation includes analyzing a list of medications taken by the officer for a medical determination on whether they could have caused a false positive result. All reports and test results are kept confidential by HPD.

Under the HPD program, on first testing positive an officer is not disciplined but is required to enroll at an approved drug abuse program at the officer's own expense. A second positive test results in termination proceedings which can mean the end of the officer's employment with HPD.

Despite orders to submit to drug testing on several occasions, Appellant refused. As a result, HPD required her to surrender her police badge, service revolver, identification card and uniform, and assigned her to a desk job.

In July 1989, the circuit court held a declaratory relief hearing wherein Appellant sought an injunction. The court denied the request for an injunction against HPD's testing program, and this appeal was taken.

III.

Appellant makes no challenge based upon the United States Constitution. However, before passing upon her constitutional challenges under the Hawaii Constitution, we first note that the United States Supreme Court has expressly held that drug screening tests at the work place do not per se violate the fourth amendment to the federal constitution. The Court rejected the requirement of individualized suspicion and held that public safety outweighs the minimal intrusion imposed upon employees by urine testing. *See Skinner v. Railway Labor Executives Ass'n*, 489 U.S. ___, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); *National Treasury Employees Union v. Von Raab*, 489 U.S. ___, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989). In addition, a number of other courts have upheld drug testing of police officers.[1]

---

[1] *See National Fed'n of Fed. Employees v. Cheney*, 884 F.2d 603 (D.C. Cir. 1989), *cert. denied,* ___ U.S. ___, 110 S. Ct. 864, 107 L. Ed. 2d 948 (1990) (testing of army civilian police); *Guiney v. Roache*, 873 F.2d 1557 (1st Cir.), *cert. denied,* ___ U.S. ___, 110 S. Ct. 404, 107 L. Ed. 2d 370 (1989) (random testing approved as to those carrying firearms or performing drug interdiction duties); *Policeman's Benevolent Ass'n of N.J., Local 318 v. Township of Washington*, 850 F.2d 133 (3rd Cir. 1988), *cert. denied,* ___ U.S. ___, 109 S. Ct. 1637, 104 L. Ed. 2d 153 (1989) (random testing approved by virtue of being "heavily regulated industry"); *Brown v. City of Detroit*, 715 F. Supp. 832 (E.D. Mich. 1989) (T.R.O. denied where testing program not facially invalid); *Weicks v. New Orleans Police Dep't*, 706 F. Supp. 453 (E.D. La. 1988), *aff'd*, 868 F.2d 1269 (5th Cir. 1989) (testing approved for specialized units, including *inter alia* Public Affairs); *Wrightsell v. City of Chicago*, 678 F. Supp. 727 (N.D. Ill.) (1988) (approved in conjunction with routine employment related medical examination); *City of Annapolis v. United Food and Commercial Workers, Local 400*, 317 Md. 544,

## IV.

Appellant contends that HPD's drug testing policy violates her right of privacy as guaranteed by article I, section 6 of the Hawaii Constitution.

### A.

Appellant first argues that the framers intended to limit government intrusion into matters of informational and personal autonomy and, unless a compelling state interest exists coupled with a showing that less restrictive alternatives are unavailable, no such intrusion is justified.

Article I, section 6 of the Hawaii Constitution reads:

> The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right.

The assembly of the Constitutional Convention of Hawaii of 1978 which adopted this right of privacy reported that:

> By amending the Constitution to include a separate and distinct privacy right, it is the intent of your Committee to insure that privacy is treated as a fundamental right for purposes of constitutional analysis. Privacy as used in this sense concerns the possible abuses in the use of highly personal and intimate information in the hands of

---

565 A.2d 672 (1989) (approved with routine examinations for police and firemen); *Caruso v. Ward*, 72 N.Y.2d 432, 534 N.Y.S.2d 142, 530 N.E.2d 850 (Ct. App. 1988) (approved in elite group in narcotics related operations); *City of East Point v. Smith*, 258 Ga. 111, 365 S.E.2d 432 (1988) (city employees with police powers may be tested). *See also Taylor v. O'Grady*, 888 F.2d 1189 (7th Cir. 1989) (prison guards who came in personal contact with prisoners may be tested); *Poole v. Stephens*, 688 F. Supp. 149 (D.N.J. 1988) (testing of prison guards approved with reasonable suspicion).

government or private parties but is not intended to deter the government from the legitimate compilation and dissemination of data. More importantly, this privacy concept encompasses the notion that in certain highly personal and intimate matters, the individual should be afforded freedom of choice absent a compelling state interest. This right is similar to the privacy right discussed in cases such as *Griswold v. Connecticut*, 381 U.S. 479 [, 85 S. Ct. 1678, 14 L. Ed. 2d 510] (1965), *Eisenstadt v. Baird*, 405 U.S. 438 [, 92 S. Ct. 1029, 31 L. Ed. 2d 349] (1972), *Roe v. Wade*, 410 U.S. 113 [, 93 S. Ct. 705, 35 L. Ed. 2d 147] (1973), etc. It is a right that, though unstated in the federal Constitution, emanates from the penumbra of several guarantees of the Bill of Rights. Because of this, there has been some confusion as to the source of the right and the importance of it. As such, it is treated as a fundamental right subject to interference only when a compelling state interest is demonstrated. By inserting clear and specific language regarding this right into the Constitution, your Committee intends to alleviate any possible confusion over the source of the right and the existence of it.

Comm. of the Whole Rep. No. 15, in Proceedings of the Constitutional Convention of Hawaii of 1978, Vol. I, at 1024.

Since that convention, we have held that the right of privacy protects at least two different kinds of interests. One is the individual's interest in avoiding disclosure of personal matters, *Nakano v. Matayoshi*, 68 Haw. 140, 147–48, 706 P.2d 814, 818–19 (1985) (citations omitted), and the other is his or her interest in freely making certain kinds of important personal decisions. *State v. Mueller*, 66 Haw. 616, 627–28, 671 P.2d 1351, 1358–59 (1983). Even in *Mueller*, we noted that the guidance offered by the constitutional convention "led back to *Griswold*, *Eisenstadt*, and

*Roe* . . . on the intended scope of privacy protected by the Hawaii constitution." *Id.* at 626, 671 P.2d at 1358. Thus, we disagree with Appellant's broad view of the framer's intent.

### B.

Appellant next contends that compelled urinalysis violates the right to privacy and personal autonomy under article I, section 6. In support of her claim to a right of privacy, Appellant makes contentions of (1) intrusion of bodily integrity; (2) overbroad and unnecessary information gathering; and (3) insufficient protection against improper disclosure.

The program does not involve an intrusion into bodily integrity. The procedure used allows the officer to produce his or her urine specimen in the privacy of a bathroom stall with no visual observation by a monitor.

There is no overbroad or unnecessary information gathering. The urine is tested only for evidence of marijuana or cocaine so that police officers who have been using illegal drugs can be identified. The list of medications being taken by the officer is used only to provide a possible benign explanation for a specimen testing positive for the presence of drugs.

There is sufficient protection against improper disclosure. Under HPD's drug urinalysis screening program, the personnel clerk responsible for the maintenance of records and reports is required to protect them against damage or loss and safeguard them against illegal access. Moreover, an agreement between HPD and SHOPO, the police officers' union, prohibits these test results from being used for criminal charges.

Therefore, we find no merit in these contentions. We do not decide whether compelled urinalysis testing might implicate a right to privacy under the state constitution, however, because we

do hold, *infra*, that the HPD testing program is the necessary means to a compelling state interest.

## C.

Appellant next contends that HPD's drug testing program fails to achieve a compelling state interest by the least restrictive means. We disagree.

When government action denies a fundamental right, in order to uphold that governmental action as constitutional, "a court must find, in balancing the state interest furthered by the [government action against] the harm to be suffered by the affected [individual], that the state interest is a compelling one; *i.e.*, the state interest outweighs the harm." *Nachtwey v. Doi*, 59 Haw. 430, 435, 583 P.2d 955, 958 (1978).

> In determining whether the state interest [] is a compelling one, a court will review that [government action] with strict scrutiny. The strict scrutiny standard of review "means that the [government action] is not entitled to the usual presumption of validity, that the [government . . .] must carry a 'heavy burden of justification,' that the [government] must demonstrate that its [program] has been structured with 'precision' and is 'tailored' narrowly to 'serve legitimate objectives and that it has selected the '[least] drastic means' for effectuating its objectives."

*Id.* (citations omitted) (quoting *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 16–17, 93 S. Ct. 1278, 1288, 36 L. Ed. 2d 16, 33 (1973).

HPD's drug testing program serves three compelling interests: (1) insuring that individual police officers are able to perform their duties safely; (2) protecting the safety of the public; and (3) preserving HPD's integrity and ability to perform its job effectively.

Police officers, since they are authorized to make arrests, conduct searches, and carry and use firearms, even when not on duty, must be mentally alert and exercise sound judgment at all times. They may be placed in a life threatening situation in which they must exercise split second judgment in the use of their firearms. In addition, police officers must control and exercise proper judgment in the use of their motor vehicles. Thus, drug use by a police officer, which can substantially impair the user's judgment and ability to react quickly, threatens police and public safety. Drug use within HPD seriously affects the integrity of the department and undermines the public's trust and confidence in the police.

Although the evidence does not indicate a large number of HPD officers take drugs, the testing program is the only effective way to deal with the problem. In the past, the traditional method of investigation by direct observation has proven to be ineffective. Also ineffective was the use of criminal investigations. The testing program is necessary and the least restrictive to meet the governmental interests.

### D.

Appellant finally contends that HPD's program bears no substantial relationship to the department's purported compelling state interest due to the inability of urinalysis to detect current impairment. We disagree.

HPD rules require a police officer at all times to enforce the law, on or off duty. Police officers are subject to being called in for duty at any time, and are required by regulation to have their police equipment, including their badge and gun, available for use at all times. Therefore, police officers are on duty or subject to an immediate call to duty at all times. Thus a police officer's drug impairment at any time threatens the compelling state interests enumerated.

## V.

Appellant also contends that HPD's drug testing program is not a reasonable search within the meaning of article I, section 7.[2] We disagree.

It is undisputed that HPD's testing program is a search under the Hawaii Constitution. In *Skinner v. Railway Labor Executives Association*, 489 U.S. at ___, 109 S. Ct. at 1412–13, 103 L. Ed. 2d at 660, and in *National Treasury Employees Union v. Von Raab*, 489 U.S. at ___, 109 S. Ct. at 1390, 103 L. Ed. 2d at 701, the United States Supreme Court decided that requiring the production of urine for drug testing is a search as it invades reasonable expectations of privacy.

What is disputed is whether HPD's program involves reasonable or unreasonable searches. As Justice (now Chief Justice) Rehnquist said of the analogous federal provision:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L. Ed. 2d 447, 481 (1979).

---

[2] The section reads:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

As previously concluded, HPD's program serves to protect both public and police safety and to preserve HPD's integrity and ability to perform its police function.

On the other side of the balance, a police officer, by reason of the employment as a police officer, has a diminished expectation of privacy. HPD's rules prohibit the illegal use of drugs even when off duty, and all police officers know they are subject to regulations which affect their private nonprofessional lives. Our reasoning here echoes our response to Appellant's claim to an invasion of privacy.

The testing program is not more intrusive than needed. The police officer produces his or her urine sample unobserved. The urine sample is tested only for evidence of illegal drug use and the information obtained is used only for the administrative actions of requiring drug abuse treatment for the first positive drug test and termination for the second.

Finally, HPD had no other practical and available means of responding to legitimate concerns over drug use in the police department. Criminally investigating officers suspected of using drugs proved ineffective. Also, it is extremely difficult, if not impossible, to detect drug use among police officers by mere observation. Both methods proved to be non–workable within the police force.

Upon balancing the competing interests, we hold that the searches are reasonable. HPD's need to conduct its suspicionless drug testing program outweighs the privacy interest of the police officers. Our interpretation of the state guaranty of freedom from unreasonable searches therefore conforms to the interpretation of the analogous federal guaranty. The United States Supreme Court held that the need to conduct suspicionless searches in the form of urine testing for evidence of drug use outweighed the privacy interests of customs employees who are engaged in drug interdiction and those who are required to carry firearms. *National*

*Treasury Employees Union v. Von Raab*, 489 U.S. at ___, 109 S. Ct. at 1392, 103 L. Ed. 2d at 704.

## VI.

Lastly, Appellant contends that the trial court did not properly conclude that the remainder of Appellant's claims are without merit. Appellant, however, fails to cite to any evidence in the record to support the contention. We are not directed to any reversible error, and we do not find any.

## VII.

HPD's testing program does not violate our constitution. We affirm the decision of the trial court.

*Elizabeth Jubin Fujiwara* (*Ronald T. Fujiwara*; Fujiwara & Fujiwara, of counsel, and *Christine Kurashige* with her on the brief) for Plaintiff–Appellant.

*Jonathan Chun,* Deputy Corporation Counsel, for Defendants–Appellees.

*Daniel R. Foley* on the brief for Amicus Curiae American Civil Liberties Union of Hawaii Foundation.