**STATE OF HAWAII**, Plaintiff–Appellee, v. **RICKY KALANI MORRIS**, Defendant–Appellant

NO. 14304

(CR. NO. 86–0347(3))

FEBRUARY 15, 1991

LUM, C.J., PADGETT, HAYASHI,
WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY LUM, C.J.

In this appeal, we consider three issues: 1) whether the condition of drug–testing by urinalysis was properly imposed as one of the conditions for Appellant's probation; 2) whether the lower court erred in denying Appellant's motion to suppress the results of the urinalysis tests; and 3) whether the urinalysis tests violated Appellant's right against self–incrimination.

We hold that the trial court was correct in concluding that there were sufficient circumstances which justified the imposition of the condition and that the court was clearly authorized by Hawaii Revised Statutes (HRS) § 706–624(2) (Supp. 1989) to require the Appellant to refrain from use of any narcotic drugs and to submit to periodic urinalysis or similar testing procedure. Furthermore, we hold that Appellant was not subject to any warrantless searches nor was his right against self–incrimination violated. We therefore affirm.

I.

In February of 1987, Appellant Ricky Kalani Morris entered a guilty plea to Burglary in the First Degree. There was no evidence that this offense was committed for drug use or that Appellant was presently addicted to drugs. However, Appellant admitted in his

presentence report that he smoked six joints of marijuana daily, with his last use being between 1984 and 1985. He also revealed that he started drinking at about age 12, drinking an average of 14 cans of beer a day. Although he reported that he stopped drinking in 1986, Appellant indicated that he had been drinking at the time of the offense; he had consumed about five beers.

On April 22, 1987, he was sentenced to probation for five years. Two of the terms of the probation were that Appellant abstain from the use of alcohol and drugs, and that he submit to drug testing. Appellant did not object to these conditions at this time, nor did he ever object to the drug testing until his probation was revoked for testing positive for cocaine twice in 1989.

On March 9, 1989, Appellant took his fifth urinalysis and tested positive for cocaine. He then admitted that he had used cocaine a few days earlier and that he used cocaine every two weeks for the past two months. His probation officer advised Appellant to seek drug treatment; but a month later, Appellant tested positive for cocaine again.

The State sought to revoke Appellant's probation due to his two positive drug tests, and at the hearing, introduced the test results over Appellant's objection. The court revoked Appellant's probation and resentenced him to an indeterminate term of ten years imprisonment, despite the probation officer's recommendation that Appellant be incarcerated for one year, under HRS § 706–660(1).

## II.

Appellant contends that the condition of drug testing was not reasonably related or reasonably necessary to his offense since there was no evidence that his burglary was for the furtherance of drug use.

The statute in question, HRS § 706–624(2) Conditions of Probation, states:

> (2) Discretionary conditions. The court may provide, as further conditions of a sentence of probation, to the extent that the conditions are reasonably related to the factors set forth in section 706–606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706–606(2), that the defendant:
>
> . . . .
>
> (i)    Refrain from use of alcohol or any use of narcotic drugs or controlled substances without a prescription;
>
> . . . .
>
> (m)  Submit to periodic urinalysis or other similar testing procedure; . . . .

We recognize that the discretionary conditions must be reasonably related to the factors set out in § 706–606 and such conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes of § 706–606(2). Factors to be considered in imposing a sentence under HRS § 706–606 are

> [t]he court, in determining the particular sentence to be imposed, shall consider:
>
> (1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  The need for the sentence imposed:
>
> (a)   To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>
> (b)   To afford adequate deterrence to criminal conduct; . . . .

Appellant's argument seems to ignore that requiring that the probation condition of drug testing bear a reasonable relationship

to the offense committed is only one of many factors the court must consider in imposing a sentence. Rather, the court must also consider Appellant's history of past drug use, as well as the need to reflect the seriousness of not using drugs while on probation, to encourage his respect for the law and to deter future criminal conduct. Accordingly, we hold that the trial court did not improperly impose drug testing as a condition of probation.

## III.

Appellant also contends that, even if the court was authorized by the above statutes to impose drug testing, Appellant's probation officer had no reasonable suspicion to order him to submit to the urinalysis tests. Appellant's reliance upon *State v. Fields*, 67 Haw. 268, 686 P.2d 1379 (1984), is misplaced. As a prelude to our discussion of *Fields*, we begin by acknowledging that urinalysis drug testing is a search under the Hawaii Constitution. *McCloskey v. Honolulu Police Dep't*, 71 Haw. 568, 799 P.2d 953 (1990). In *McCloskey*, while we implicated the Constitution, we held such searches to be reasonable.

In *Fields*, we overturned an overly broad probation condition requiring the defendant to "be subject at all times during her period of probation to a warrantless search of her person, property, and place of residence for illicit drugs and substances by any law enforcement officer including her probation officer." *Id.* at 273, 686 P.2d at 1384. The court in *Fields* did not address the specific issue of whether the condition of drug testing was reasonable.

As in *McCloskey*, we find that similarly those on probation have a diminished expectation of privacy with respect to the minimal intrusions of drug testing which are in furtherance of the State's reasonable interests set out in HRS § 706–606. While probationers have a right to enjoy a significant degree of privacy and liberty, as the court in *Fields* admitted, there is "limited freedom

afforded someone who but for the grace of the sentencing court would be in prison." *Id.* at 278, 686 P.2d at 1388.

In particular, Appellant's situation does not involve, as *Fields* did, a "near total surrender of privacy." *Id.* at 278, 686 P.2d at 1387. Rather, the testing is carried out in a reasonable manner and is no more intrusive than needed. *Fields* is further distinguished from Appellant's situation since, at the time *Fields* was decided, HRS § 706–624 did not contain a specific condition authorizing the court to impose drug testing, as HRS § 706–624(2)(m) now does, but rather allowed the court to order any condition that would reasonably relate to the rehabilitation of the defendant and was not unduly restrictive. Here, the court acted within the authority provided by HRS § 706–624(2)(m) and, thus, no reasonable suspicion is required for conducting the tests and the evidence of the tests need not be suppressed.

Appellant's argument that the probation officer must have reasonable suspicion to order such testing makes no sense in view of our ruling that the judge is allowed to impose such a condition and that such condition is reasonable. The probation officer is merely carrying out a mandate of the court, and a further condition to the performance of his duties is not required.

## IV.

Lastly, Appellant argues that the probation condition of drug testing and his admission of drug use during a meeting with his probation officer violated his right against self–incrimination. This argument is also without merit as Appellant fails to recognize the key distinction courts have made between "testimonial" and physical evidence obtained from a defendant.

[T]he privilege against self–incrimination is not necessarily implicated whenever a person suspected of

criminal activity is compelled in some way to cooperate in developing evidence which may be used against him. *State v. Wyatt*, 67 Haw. 293, 302, 687 P.2d 544, 551 (1984) (citations omitted). The Court in *Wyatt* distinguished between "communicative" evidence from the defendant and making him the source of "real or physical evidence." *Id.* at 302, 687 P.2d at 551. Drug testing, like taking a blood sample, fingerprint comparisons and handwriting exemplars, does not infringe upon the privilege against self–incrimination.

Appellant also claims that his admission to his probation officer of his drug use was not free and voluntary, and further claims that the sentencing judge abused his discretion in resentencing Appellant to a term of incarceration for ten years. We find both claims without merit.

Accordingly, we affirm.

*Susan Arnett (Joyce K. Matsumori–Hoshijo* on the brief), Deputy Public Defenders, for defendant–appellant.

*Simone Polak (James B. Takayesu* on the brief), Deputy Prosecuting Attorneys, for plaintiff–appellee.

## DISSENTING OPINION BY WAKATSUKI, J.

I respectfully dissent from Part III of the majority's opinion.

### A.

In *State v. Fields*, 67 Haw. 268, 686 P.2d 1379 (1984), this court held that a warrantless search of a probationer's person, property, and place of residence for illicit drugs is constitutionally

valid in limited circumstances. One, the search must be initiated by a probation officer pursuant to a program of rehabilitation. Two, the search must "be justified by a reasonable suspicion supportable by specific and articulable facts that dangerous drugs and substances are being secreted by the probationer." *Id.* at 283, 686 P.2d at 1390.

Fully recognizing that probationers have a diminished expectation of privacy, and that there is substantial governmental interest in programs designed for the rehabilitation of probationers, this court nonetheless stated that a probationer's "interest in privacy is [not] insignificant . . . that she may be subjected to searches at the supervisor's caprice or fancy." *Id.* at 283, 686 P.2d at 1390.

The State concedes in this case that it had no reasonable suspicion that Morris had ingested any illegal drug or substance. Pursuant to *Fields*, the search, i.e., the urinalysis, was then constitutionally invalid. Therefore, the fruits of that search should have been suppressed. Otherwise, any warrantless taking of urine from a probationer for analysis opens the door to harassment of the probationer at the whim of the probation officer.

### B.

The majority attempts to distinguish this case from *Fields* by holding that urinalyses of probationers are reasonable searches not proscribed by the Constitution.

Recently, this court held that the urinalysis program conducted by the Honolulu Police Department on its own police officers constituted reasonable searches not proscribed by the constitution. *McCloskey v. Honolulu Police Dep't*, 71 Haw. 568, 799 P.2d 953 (1990). In reaching that determination, this court stated:

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for

the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L. Ed. 2d 447, 481 (1979). *Id.* at 578, 799 P.2d at 958.

Relying on extensive evidence presented to the trial court, this court upheld warrantless urinalyses of police officers based on considerations that police carry firearms, that their duties place them in life–threatening situations requiring split–second judgment in use of firearms, and that police officers are often in use and control of motor vehicles. Furthermore, the integrity of the police department and public trust and confidence in police officers are legitimate state interests which weighed in the balance of requiring urinalyses of police officers. This court also considered the diminished expectation of privacy one has when employed as a police officer, the fact that the testing program was no more intrusive than needed and that the police department had no other practical and available means of responding to concerns of drug use in the department.

The same considerations which led this court in *McCloskey* to conclude that a urinalysis of a police officer is a reasonable search are not present in this case. Nonetheless, the majority perfunctorily states that "the testing is carried out in a reasonable manner and is no more intrusive than needed."[1] This statement is unexplained in the majority opinion and unsupported by the record in this case.

---

[1] In *McCloskey,* this court deemed it important enough to note that the police officer was permitted to provide a urine sample in the privacy of an enclosed toilet stall without visual observation of a moniter. Conversely, in this case there was evidence that Morris had to produce his urine sample while under the direct visual observation of a probation official.

## C.

The majority also claims that *Fields* is distinguishable because "at the time *Fields* was decided, HRS § 706–624 did not contain a specific condition authorizing the court to impose drug testing, as HRS § 706–624(2)(m) now does[.]"

*Fields* held that a warrantless search of a probationer without reasonable suspicion runs afoul of our constitution. A legislative enactment purporting to authorize that which is unconstitutional cannot stand. "An unconstitutional act is not a law; it binds no one, and protects no one." *Huntington v. Worthen*, 120 U.S. 97, 101–02 (1887).

HRS § 706–624(2)(m) cannot be read as authorizing warrantless urinalysis of a probationer absent reasonable suspicion. *Fields* is not distinguishable.

## D.

I would hold that the urinalysis conducted in this case was constitutionally invalid, and therefore, any evidence obtained therefrom should have been suppressed. The order revoking Morris' probation should be reversed.