SUSAN CUMMINGS, Plaintiff-Appellee, Cross-Appellant,
v.
MARLENE ROTH, Defendant-Appellant, Cross-Appellee, and
GIANFRANCO CONTESINI, KARL C. DILLER, ELIZABETH GINSBURG, and
BERNARD PURDY, Defendants-Appellees, and
MILES KIMHAN and SUZETTE KIMHAN, Defendants.
No. 28272.
Intermediate Court of Appeals Hawaii.
December 22, 2009.
On the briefs:
Eric A. Seitz, Lawrence I. Kawasaki, and Ronald N. W. Kim, for Defendant-Appellant, Cross-Appellee.
John R. Remis, Jr., for Plaintiff-Appellee, Cross-Appellant.
Lois K. Perrin, (American Civil Liberties Union of Hawaii Foundation) and Earle A. Partington for Amicus Curiae, American Civil Liberties Union of Hawaii Foundation.

MEMORANDUM OPINION
NAKAMURA, C.J., WATANABE, and LEONARD, JJ.
Defendant-Appellant, Cross-Appellee Marlene Roth (Roth) appeals from the Final Judgment and the Order Following Memorandum of Decision (Order), both entered by the Circuit Court of the First Circuit[1] (circuit court) on August 22, 2006. We affirm in part and vacate in part.

BACKGROUND
Roth and her neighbor, Plaintiff-Appellee, Cross-Appellant Susan Cummings (Cummings), own homes on a lot zoned R-10[2] in Lanikai, Oahu (Property). The homes, which are the only homes on the Property, were developed under a condominium property regime pursuant to Hawaii Revised Statutes (HRS) chapter 514A (2006) and are subject to the Declaration of Horizontal Property Regime (Declaration) and By-Laws (By-Laws) of the 137 Kaiolena Drive Homeowners' Association (Association).
The Declaration imposes a number of "divisions, limitations, restrictions, covenants, and conditions" on the Property, including the following restriction on use of the homes (Use Restriction):
E. USE. Each Home shall be occupied and used for residential purposes only, and neither Home shall be used as a rooming house or in connection with the carrying on of any trade or business whatsoever. The foregoing notwithstanding, the Owner of each Home shall have the absolute right to lease such Home for residential purposes, for periods of any duration, subject to all of the provisions of this Declaration and the [By-Laws] filed in the Land Court contemporaneously herewith[.]
The Declaration further provides, inter alia, as follows:
(1) The homes shall share a 1,200-square-foot unpaved driveway as a "limited Common Element" and the driveway "shall at all times remain available for purposes of ingress and egress to and from both Homes";
(2) "One mailbox shall be appurtenant to and for the exclusive use of each [h]ome, as shall be designated thereon";
(3) Each home has an appurtenant fifty-percent undivided interest in the common elements;
(4) The common elements "shall have a permanent character[,] . . . shall not be altered without the consent of the Owner of such Home as expressed in amendment to this Declaration filed in the Land Court[,]" and "shall remain undivided and no right shall exist to partition or divide any part thereof except as provided by the Horizontal Property Act"; and
(5) "No Owner shall do any work which could jeopardize the soundness or safety of the Project, reduce the value thereof, or impair any easement or hereditament, nor may any Owner add any material structure or excavate any additional basement or cellar, without in every such case the written consent of the Owner of the other Home being first obtained. All other additions to or alterations of either Home or its appurtenant limited Common Elements by the Owner of such Home shall be permitted without restriction, provided that the Owner making such additions or alterations strictly complies with all applicable laws, ordinances, and regulations of any governmental entity, and also obtains any necessary building permits, at that Owner's sole expense".

PROCEDURAL HISTORY
Cummings brought the underlying lawsuit against Roth and the following "tenants, boarders or [individuals who] in some manner unknown to [Cummings] reside, occupy, and/or use" Roth's home: Suzette Kimhan, Ginafranco Contesini (Contesini), Karl C. Diller (Diller), Elizabeth Ginsburg (Ginsburg), and Bernard "Doe"[3] (collectively, Tenant Defendants),[4] alleging, among other claims, that Roth had violated and was continuing to violate the Declaration and By-Laws by (1) operating a bed and breakfast and a decorating/design business in her home; (2) using her home as a rooming house; (3) failing to properly identify, label, and use her assigned mailbox; and (4) allowing excessive noise to emanate from her home. Cummings sought declaratory and injunctive relief, damages, attorney's fees, and costs due to Roth's alleged violations.
On July 26, 2004, Roth filed an "Amended Counterclaim for Declaratory and Injunctive Relief and Damages[.]" Roth asked the circuit court to (1) determine that Cummings has and continues to violate the Declaration and laws of the City and County of Honolulu (City) and State of Hawai`i (State); (2) order Cummings to (a) remove her third parking space, which was encroaching on the common driveway and impeding Roth's ingress and egress, and restore the common area to the condition it was in before the parking space was installed, (b) remove pavers from her first and second parking spaces that are permitted only as unpaved parking spaces under the Declaration, remove the parts of the parking spaces that encroach on the driveway, and restore the parking spaces to the condition they were in before Cummings installed pavers to the spaces, and (c) remove the decks, porches, awning, and other construction that Cummings had installed without Roth's consent and in violation of City building, planning, and zoning ordinances and regulations, and restore the Property to its previous condition; (3) enjoin Cummings from "using, defacing, opening, or examining the contents of, or removing the contents of the mailbox for [Roth's] dwelling," and compensate Roth for Cummings's "past actions in using, defacing, opening, examining or removing the contents of [Roth's] mailbox"; (4) permanently enjoin Cummings "from any further construction or alteration of her property in violation of the Declaration or . . . any ordinances or regulations of the [City] and any statutes of the [State]"; and (5) award Roth monetary damages, attorney's fees, and costs.
On July 31, 2006, following a seven-day bench trial, the circuit court entered a Memorandum of Decision, which determined, in part, that Roth had violated the Use Restriction:
The overwhelming weight of the credible evidence reveals that Roth is conducting an illegal bed and breakfast. Roth's testimony denying this fact completely lacked credibility.
In addition, although the "Use" provision of the Declaration allows Roth to rent out the entire Home for residential purposes, it prohibits her from conducting a "rooming house," which she has done or is doing for some longer term renters, who either reside in Hawaii or stay in Hawaii for longer periods than the transient bed and breakfast renters, . . . .
Thus, Cummings has prevailed on the merits of her claims that Roth is conducting a prohibited bed and practice [sic] and operating a prohibited rooming house.
In terms of Cummings' request for injunctive relief, the court must also consider the balance of equities and the public interest. With respect to the balance of equities, Cummings has been greatly inconvenienced by the stream of Roth's vacation and long term renters going up and down the driveway at all hours, and disturbing the peace of her home. In addition, there is additional noise from these additional people on the [Property]. Moreover, there is added wear and tear on the driveway. Also, Cummings has been disturbed on many occasions by people coming to her house, thinking that her house is the bed and breakfast location. Furthermore, Cummings could also be held liable for injuries to such renters or bed and breakfast patrons on the common elements. It appears that financial problems may have lead Roth to begin these illegal operations. However, the balance of equities supports injunctive relief.
In addition, the public interest clearly supports the granting of injunctive relief. Roth's bed and breakfast and illegal rental activities alter the character of a residential community. In addition, due partly to the operation being illegal (and due partly to greed), Roth is not paying transient accommodations, general excise, and income taxes owed the government from income derived from these short and long term rentals. The failure to pay taxes deprives the public of the monies that would have been paid over to the government by law abiding hotel operators or landlords, which would then be available to support and maintain public infrastructure. Operators such as Roth who do not pay taxes take advantage of public resources for their own personal benefit.
Pursuant to HRS Section 46-4 and her rights as an owner under the applicable Declaration, Cummings is entitled to an injunction prohibiting Roth from any further bed and breakfast activity as well as prohibited rooming house activity. Cummings is entitled to an injunction specifically prohibiting [Roth] from conducting a bed and breakfast or other short term rental operation out of her home, as well as prohibiting her from further renting out rooms to longer term renters, and thus operating a "rooming house" prohibited by the Declaration.
(Emphasis in original.)
The circuit court ordered Contesini to move out of Roth's home by September 1, 2006 and prohibited Roth from collecting any additional rent from Contesini. The circuit court also prohibited Ginsburg and Diller from returning to live in Roth's home and ordered Purdy to appear at a future hearing so the circuit court could determine his status and whether he should be ordered to move out of Roth's home. The circuit court reserved for a future hearing the determination of what to do with future visitors to Roth's home, noting that
[t]he lack of credibility of Roth, as well as her father's lack of candor . . . makes it very difficult for the court to ascertain whether future visitors to Roth's home are actually relatives or friends coming to stay without paying rent, or are renters. Roth's representations on these issues cannot be believed, due to her incredible lack of honesty and candor.
As an example, she had no qualms about testifying falsely that the family from New York staying with her at the time of the end of trial, whose names she couldn't readily remember, and scheduled to return several days later, were her friends, and were mutual friends of hers and her [sic] Nancy Porter that was arriving that afternoon. When Nancy Porter came and testified later that day, she testified truthfully that she had never met those visitors from New York that were staying at Roth's home until she arrived earlier that day, and she did not know who they were.
Additionally, the circuit court determined that the 137 Kaiolena Drive address belongs to Cummings's home and the 137A Kaiolena Drive address belongs to Roth's home. The circuit court granted Cummings's request for injunctive relief, prohibited Roth from continuing to use the 137 address, and required Roth to place an "A" after or under the "137" on her mailbox.
The circuit court declined to address Cummings's complaint that Roth's large vacuum cleaner generated excessive and late noise, and noted that its ruling prohibiting Roth from further bed-and-breakfast and rooming-house activities should reduce the occasions that the vacuum cleaner is used.
The circuit court declined to hold Roth in contempt of court for violating an order that the circuit court had entered on September 1, 2004, prohibiting Roth from conducting any "bed and breakfast/transient accommodation" business on the Property. However, the circuit court observed
Roth having already shown her repeated disdain and contempt for court orders and the law, through not only this violation, but the numerous other violations that have occurred since entry of the order, the court will factor in the numerous previous violations of the court order in fashioning relief for any future violations. As explained by the court at in [sic] its oral ruling at the conclusion of trial, any additional violations of the prohibitions on bed and breakfast/transient accommodation rentals, or the operation of the rooming house, can result in a [sic] order requiring Roth to sell her home.
(Emphasis in original.)
Regarding Roth's amended counterclaim, the circuit court ruled in favor of Cummings and against Roth on all claims, except for the claim regarding the overgrowth of plants "between the paved driveway and [Cummings's] fence" and ordered that all plants in the planter area be removed. The circuit court acknowledged that Cummings had violated the Declaration and City requirements by not obtaining Roth's consent and a building permit before constructing the decks in front of and behind Cummings's home. However, the circuit court noted that Cummings had obtained a building permit after the fact. Additionally, Roth had similarly failed to obtain the consent of the prior owner of Cummings's home when Roth tore down her original home and built a large, two-story home in its place and did not obtain Cummings's consent when Roth enclosed her garage and created a bed-and-breakfast suite.
On August 22, 2006, the circuit court entered the Order, which addressed issues that had been unresolved in the Memorandum of Decision. Relevant to this appeal, the circuit court held:
With respect to the issue of other overnight guests, the court does not intend to preclude relatives or friends of [Roth] from visiting Hawaii and staying at her house, as long as such visitors are actually relatives or friends of [Roth] and are not paying any rent. Under the circumstances, based on the hearing, the court ORDERS that [Roth] send a letter to [Cummings's] attorney . . . with a copy to the court . . . as soon as practicable whenever she anticipates arrival of relatives or friends that will stay overnight. [Roth] must include in the letter the names of the persons, their genders, their approximate ages, and the anticipated nights of their stays. In addition, it is possible that [Roth] could have unanticipated overnight guests, such as friends who come over and spend the night. [Roth] must mail a letter to [Cummings] including the same information as to such unanticipated overnight guests within one day after such guest(s) leaves her house. These orders remain in effect for one years [sic], subject to further order of the court.
The court realizes that these remedies are unusual. Unfortunately, [Roth's] lack of candor displayed at trial necessitates unusual measures to ensure that she not continue her illegal bed and breakfast, or continue to accept boarders in violation of the condo documents. These orders are subject to revision based on the circumstances.
On August 22, 2006, the circuit court entered final judgment in accordance with its Memorandum of Decision and the Order. With respect to the claims in Cummings's complaint,[5] the circuit court ruled as follows:
In favor of [Cummings] and against [Roth, Contesini, Diller, Ginsburg, and Purdy] granting a declaratory judgment that Roth's conducting of a bed and breakfast in her home. . . violates the terms and conditions of the Declaration. . . and the laws of the [City] and the [State];
In favor of [Cummings] and against [Roth, Contesini, Diller, Ginsburg, and Purdy] granting a declaratory judgment that Roth's conducting of a rooming house in her home . . . violates the terms and conditions of the Declaration . . .;
In favor of [Cummings] and against [Roth, Contesini, Diller, Ginsburg, and Purdy] granting a permanent injunction prohibiting them from conducting or participat[ing] in the conducting of a bed and breakfast and/or of a rooming house in [Roth's] home . . ., prohibiting . . . Ginsburg and Diller from returning to live in [Roth's] house and requiring [Contesini] to move out of Roth's home by September 1, 2006;
In favor of [Cummings] and against [Roth] granting injunctive relief requiring [Roth] to send a letter to [Cumming's] attorney . . . with a copy to the [circuit court], as soon as practicable whenever she anticipates arrival of relatives or friends that will stay overnight. [Roth] must include in the letter the names of the persons, their genders, their approximate ages, and the anticipated nights of their stays. In addition, because it is possible that [Roth] could have unanticipated overnight guests, such as friends who come over and spend the night, [Roth] must mail a letter to [Cummings] including the same information as to such unanticipated overnight guests within one day after such guest(s) leaves her house. These orders remain in effect for one years [sic], subject to further order of the court;
In favor of [Cummings] and against [Roth] granting injunctive relief, prohibiting [Roth] from using her home for commercial purposes;
In favor of [Cummings] and against [Roth] granting injunctive relief, prohibiting [Roth] from continuing to use the address 137 Kaiolena Drive, and requiring Roth to place an "A" after or under the 137 on her permanent mail box on the street, and, if [Roth] fails to do so within two weeks, allowing [Cummings] to place the "A" on Roth's mailbox at [Cummings's] expense[;]
In favor of [Roth] and against [Cummings] on [Cummings's] complaints regarding [Roth's] vacuum cleaner; and
In favor of [Roth] and against [Cummings] on [Cummings's] request for monetary damages, no proof of such damages having been submitted.
With respect to Roth's counterclaim and amended counterclaim, the circuit court ruled in favor of Cummings and against Roth "on all claims, except for the claim regarding the overgrowth of plants in the planter area between the paved driveway and [Cummings's] fence, granting injunctive relief requiring Cummings to cause all plants in that planter area to be removed, and not to replant any plants into that area." Any remaining parties or claims were dismissed except for claims for attorney's fees and costs.
On September 1, 2006, Roth filed her motion to reconsider, amend and/or alter judgment. On October 13, 2006, the circuit court entered its order denying the motion.
On November 8, 2006, Roth filed her notice of appeal. On the same day, Roth filed a motion to stay judgment and order pending appeal, which was denied by the circuit court on December 12, 2006. Roth subsequently filed with this court a motion for stay pending appeal, and on April 13, 2007, this court granted that part of Roth's motion that requested a stay of the portion of the judgment that required Roth to provide a letter to Cummings's attorney, with a copy to the circuit court, detailing overnight stays of Roth's guests.

ISSUES ON APPEAL
Roth contends that (1) the circuit court should have concluded that the Use Restriction was ambiguous and unenforceable; (2) the Order entered by the circuit court constituted an unconstitutional infringement of Roth's rights to property, privacy, and free association; and (3) the circuit court should have found that the Declaration was abandoned and unenforceable.

DISCUSSION
Upon careful review of the record and briefs, and having given due consideration to the arguments advanced and the issues raised, we resolve the issues raised by Roth as follows.

A.
The Use Restriction of the Declaration clearly and unambiguously requires the Property to "be occupied and used for residential purposes only" and prohibits the homes on the Property from being "used as a rooming house or in connection with the carrying on of any trade or business whatsoever."
There is overwhelming evidence in the record to support the circuit court's finding that Roth was carrying on a rooming house, including Roth's admission that she had been renting out rooms in her home "for over twenty years."
The term "rooming house" is defined as "a house where lodgings are provided for rent[.]" MERRIAM-WEBSTERTS COLLEGIATE DICTIONARY 1082 (11th ed. 2003). "[L]odging" is defined as "a place to live[,]" "sleeping accommodations[,]" "a temporary place to stay[,]" or "a room in the house of another used as a residence[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 731 (11th ed. 2003). Since Roth admitted that she had been renting out rooms in her home, her home clearly was being used as a rooming house.
Furthermore, since Roth was collecting rent from those guests and tenants who rented rooms from her, she was clearly carrying on a business in her home, in violation of the Use Restriction.
Roth claims that she was authorized to rent out rooms in her home because the Use Restriction expressly provided that "the Owner of each Home shall have the absolute right to lease such Home for residential purposes, for periods of any duration, subject to all of the provisions of this Declaration and the By-Laws[.]" Roth is mistaken. The Use Restriction only authorizes her to lease her "Home[,]" which is commonly understood to refer to the entire house structure, not a room within a house structure. See MERRIAM-WEBSTERTS COLLEGIATE DICTIONARY 594 (11th ed. 2003) ("home" is "one's place of residence" or "house"); BLACK'S LAW DICTIONARY 801 (9th ed. 2009) ("home" is defined as "[a] dwelling place.").
Accordingly, Roth clearly violated the Use Restriction by renting out rooms within her home.

B.
Roth contends that the part of the Order that precluded her from having "any long-term roommates whatsoever" was an unconstitutional regulatory taking because it deprived her of a "legitimate and beneficial use of her property[.]" Roth also argues that the Order "amounts to an unconstitutional taking" because the Order allowed Cummings "to maintain a parking space[6] and concrete pavers on the driveway, thereby impermissibly altering the permanent character of the common elements." We disagree.
The Hawai`i Supreme Court has stated that "[a] regulatory taking occurs when the government's application of the law to a particular landowner denies all economically beneficial use of his or her property without providing compensation." Public Access Shoreline Hawaii by Rothstein v. Hawaii County Planning Comm'n, 79 Hawai`i 425, 451-52, 903 P.2d 1246, 1272-73 (1995), cert. denied, 517 U.S. 1163 (1996) (emphasis added).
In this case, the circuit court's decision to enforce the Use Restriction against Roth did not involve an application of law but, rather, an application of a provision in the Declaration that Roth expressly agreed to comply with when she signed the deed to her home. Moreover, the circuit court's enforcement of the Use Restriction did not deprive Roth of all economically beneficial use of her home since she was free to lease her entire home or sell it. Thus, no regulatory taking occurred when the circuit court precluded Roth from renting her rooms to "long-term roommates[.]"
Regarding the pavers that Cummings had installed for a third parking space that intruded onto the common driveway, the circuit court found in its Memorandum of Decision as follows:
As explained earlier, until this lawsuit was filed by Cummings, Roth had no complaints about Cummings installing a parking stall with pavers by the driveway, and the fact that the pavers actually intruded onto the driveway area. As a practical matter, the photographs showed that the paved driveway was deteriorating (more so due to increased traffic due to Roth's transient vacationers), and that the pavers do not actually adversely affect the driveway. Therefore, the court will not require that Cummings remove the parking space or the pavers.
(Footnote omitted.) We fail to see how the circuit court's refusal to require Cummings to remove the parking space or pavers, which the circuit court expressly found "do not actually adversely affect the driveway," constitutes a regulatory taking.

C.
Roth claims that the part of the circuit court's Order that expels her long-term renters, requires her to notify Cummings's counsel and the circuit court of specific information regarding expected overnight visitors to Roth's home, and requires her to mail a letter to Cummings with the same information within a day after unanticipated overnight guests leave Roth's house violates her right to privacy under article I, section 6 of the Hawai`i Constitution[7] and "the penumbra of various provisions of the United States Constitution."
The Hawai`i Supreme Court has stated that the right to privacy under article I, section 6 of the Hawai`i Constitution "protects at least two different kinds of interests. One is the individual's interest in avoiding disclosure of personal matters, and the other is his or her interest in freely making certain kinds of important personal decisions." McCloskey v. Honolulu Police Dep't, 71 Haw. 568, 574, 799 P.2d 953, 957 (1990) (citations omitted). The first interest is referred to as "informational" privacy, and the second interest is referred to as "personal autonomy" privacy. State v. Mallan, 86 Hawai`i 440, 443 n.4, 950 P.2d 178, 181 n.4 (1998). In McCloskey, the supreme court noted that the right to privacy was adopted by the assembly of the Constitutional Convention of 1978, which reported that
[b]y amending the Constitution to include a separate and distinct privacy right, it is the intent of your Committee [of the Whole] to insure that privacy is treated as a fundamental right for purposes of constitutional analysis. Privacy as used in this sense concerns the possible abuses in the use of highly personal and intimate information in the hands of government or private parties but is not intended to deter the government from the legitimate compilation and dissemination of data. More importantly, this privacy concept encompasses the notion that in certain highly personal and intimate matters, the individual should be afforded freedom of choice absent a compelling state interest. This right is similar to the privacy right discussed in cases such as Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965), Eisenstadt v. Baird, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972), Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), etc. It is a right that, though unstated in the federal Constitution, emanates from the penumbra of several guarantees of the Bill of Rights. Because of this, there has been some confusion as to the source of the right and the importance of it. As such, it is treated as a fundamental right subject to interference only when a compelling state interest is demonstrated. By inserting clear and specific language regarding this right into the Constitution, your Committee intends to alleviate any possible confusion over the source of the right and the existence of it.
McCloskey, 71 Haw. at 573-74, 799 P.2d at 956-57 (internal brackets omitted) (quoting Comm. of the Whole Rep. No. 15, in Proceedings of the Constitutional Convention of Hawai`i of 1978, Vol. I, at 1024). Thus, the state constitutional right to privacy is a fundamental right, which may be denied or interfered with only when a compelling state interest is demonstrated. Id. at 576, 799 P.2d at 957. Whether a compelling state interest has been demonstrated is reviewed pursuant to the strict scrutiny standard. Id., 799 P.2d at 957. This standard means that
government action is not entitled to the usual presumption of validity, that the government must carry a `heavy burden of justification,' that the government must demonstrate that its program has been structured with `precision' and is `tailored' narrowly to `serve legitimate objectives and that it has selected the `least drastic means' for effectuating its objectives."
Id., 799 P.2d at 957 (internal brackets and ellipsis omitted).
In ordering Roth's long-term renters to leave Roth's home, the circuit court was merely enforcing the Use Restriction of the Declaration that Roth agreed to comply with as part of her deed. The Order did not affect Roth's interest in avoiding disclosure of personal matters, nor Roth's interest in freely making certain kinds of important personal decisions. Therefore, the twin interests which the right to privacy was intended to protect were not implicated by the Order expelling Roth's tenants, and Roth's right to privacy was not infringed by the expulsion order.
The part of the Order that required Roth to disclose personal information about her overnight visitors (names, genders, approximate ages, and length of stay) is a bit more problematic. The circuit court believed that this unusual remedy was required because Roth had repeatedly defied the circuit court's September 1, 2004 order, entered without objection from Roth, that "no bed and breakfast/transient accommodation business be conducted on the [P]roperty." While the circuit court clearly had an interest in ensuring that Roth complied with its prior order, the means selected to ensure compliance does not appear to be the least restrictive means available or narrowly tailored for effectuating the circuit court's purpose. The record on appeal indicates that Cummings had installed a security camera outside her home that could alert her to visitors to Roth's home, in violation of the circuit court's Order. Similarly, if Cummings continued to receive mail in her mailbox that was addressed to individuals other than herself or Roth, Cummings would be on notice that Roth may be renting out rooms and would be free to pursue enforcement of the court's Order. An amicus curiae brief submitted in this case suggested that the Order could have been more narrowly tailored to require "Roth to submit a sworn statement monthly indicating that she had not offered her home for a fee to any person" or, alternatively, "the circuit court could have . . . ordered an evidentiary hearing upon receipt of a complaint by [Cummings] that Roth had violated the court's orders." (Footnote omitted.)
We note, additionally, that requiring disclosure of overnight guests does not accomplish the circuit court's goal of preventing Roth from running a bed-and-breakfast business or a rooming house out of her home because Roth could simply notify Cummings's attorney and the circuit court about the expected overnight guests and thereby comply with the Order. Moreover, requiring Roth to disclose information about unexpected overnight guests after the fact does not seem narrowly tailored to achieve the circuit court's purpose.
Inasmuch as there appear to be less restrictive and narrowly tailored means to enforce the Declaration against Roth, we vacate that part of the Order that required Roth to provide personal information about her guests to Cummings, Cummings's attorney, or the circuit court and remand this case to the circuit court for further proceedings consistent with this opinion.

D.
Roth argues that the Order violated her right to freedom of association under article I, section 4 of the Hawai`i Constitution, which provides, in relevant part: "No law shall be enacted . . . abridging the . . . right of the people peaceably to assemble[.]"
In expelling the long-term renters from Roth's home, the circuit court enforced a Use Restriction contained in the Declaration, not a law enacted to abridge Roth's associational rights. Roth's associational rights were not implicated in this case.

E.
Roth asserts that the Declaration and By-Laws were abandoned because the Association never met, held any annual meetings, or undertook any other actions required by the Declaration and By-Laws. This argument is without merit.
The Hawai`i Supreme Court has stated that the question of abandonment of a restrictive covenant "is one of fact, and the burden of proof on this issue is on the defendant. . . . In order to support a finding of abandonment, it must be shown that the lot owners of the subdivision acquiesced in substantial and general violations of the covenant within the restricted area." Sandstrom v. Larsen, 59 Haw. 491, 496-97, 583 P.2d 971, 976 (1978) (citations and footnote omitted).
In this case, Roth herself filed an amended counterclaim, seeking to enforce the terms and conditions of the Declaration. Furthermore, Cummings actively sought to enforce the Declaration against Roth and did not acquiesce in Roth's violations of the Declaration. As such, the Declaration was not abandoned, and its terms are enforceable.

CONCLUSION
In light of the foregoing discussion, we vacate that part of the Order Following Memorandum of Decision and that part of the Final Judgment that require Roth to provide personal information about her overnight visitors to Cummings's attorney, the circuit court, or Cummings herself, and we remand this case with instructions that the circuit court modify the Order Following Memorandum of Decision and the Final Judgment so that they are more narrowly tailored to achieve the circuit court's legitimate objective that Roth comply with the Declaration. In all other respects, we affirm the Order Following Memorandum of Decision and the Final Judgment.
NOTES
[1] The Honorable Sabrina S. McKenna presided.
[2] Pursuant to Revised Ordinances of Honolulu § 21-3.70-1 and Table 21-3.2 at 21-45 (Hon. Supp. No. 2, 2-03), a lot with R-10 zoning may be used for a "[o]ne-family dwelling, detached, and other uses[.]"
[3] Bernard "Doe" was subsequently identified as Bernard Purdy (Purdy).
[4] Tenant Defendants are not parties to this appeal.
[5] The circuit court's rulings as to Roth's amended counterclaims are not at issue on appeal.
[6] Roth appears to have misconstrued the Order. Although the Order declines to order Cummings to remove the pavers and parking space in the driveway, nothing in the Order affirmatively permits or prohibits Cummings from parking on the pavers or parking space in the driveway.
[7] Article I, section 6 of the Hawaii Constitution provides: "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right."